## WILHELMI v. LEONARD *et al.*

1. EVIDENCE: CROSS-EXAMINATION. The court below did not err in refusing to permit a witness to be interrogated on cross-examination touching a conversation which was not either wholly or partially referred to in the direct examination.

2. BILL ON EXCEPTIONS. Under the Code of 1851, a general exception to the charge of the court to a jury entitled the party excepting to present to the appellate court, for review, any erroneous position in any portion of the charge.

3. SAME. The rule of the Code of 1851, as to bills of exceptions, governs in actions commenced before the Revision of 1860 took effect.

4. MORTGAGE: MERGER. When a mortgagee purchases or takes a release of the equity of redemption, the whole estate is vested in him, and the mortgage and the mortgage debt are extinguished, unless it expressly or impliedly appears that the parties intended otherwise.

5. SAME: PRO TANTO. When a mortgagee takes a conveyance of a part of the mortgage property it operates to extinguish the mortgage debt *pro tanto;* and when there are two mortgages to secure the same debt, one of personal and one of real property, a purchase by the mortgagee, at a sale made under a senior incumbrance, of the realty does not discharge the mortgage of the personalty.

6. EXECUTION OF NEW NOTE. When the holder of one of several notes secured by mortgage delivered up the note to the mortgagor and maker, and took a new note for a different amount, payable at another date, and without any agreement that it should be secured by the mortgage, it was held that the holder lost his right to the security as against the holder of the other notes secured by the mortgage.

7. ESTOPPEL. A party cannot claim the benefit of a lien under a mortgage which he alleges has been discharged by merger, and was invalid as a fraud upon creditors.

8. LIEN: JUDGMENT IN FORECLOSURE. A judgment on a note secured by mortgage is a lien on the mortgaged property only from the date at which it was recovered when it does not order a foreclosure of the mortgage.

9. CHATTEL MORTGAGE. While the mere retention of mortgaged personal property by the mortgagor does not render the mortgage fraudulent, such retention under circumstances which show that it is for the benefit of the mortgagor alone, will justify a jury in finding that it is not *bona fide.*

10. JURY: FRAUDULENT JUDGMENT. The question whether in *point of fact* a judgment by confession was fraudulent is within the province of a jury. *Aliter* when the question is upon the sufficiency of the statement.

*Appeal from Scott District Court.*

WEDNESDAY, JUNE 11.

THIS was an action by the plaintiff as mortgagee of one Nicholas Veiths, against the defendant, Leonard, as sheriff of Scott county, for unlawfully taking, and for the conversion of certain personal property, of which plaintiff alleges he was the lawful owner and of which he was entitled to the possession.

The plaintiff claims title by virtue of a chattel mortgage given to him on said property, dated the 11th day of November, 1857. This mortgage was given to secure the payment of a note made by Veiths to plaintiff for $1,200. Other parties were the owners of certain notes signed by Veiths, and also secured by the same mortgage, which it is claimed, plaintiff had become liable for, and had assumed to pay. The mortgage was conditioned to pay all of the notes at maturity.

The defendants deny the allegations of the petition, and justify the taking, by averring that on the 28th day of September, 1859, the said Nicholas Veiths, the mortgagor, as aforesaid, confessed a judgment in favor of the defendant, Hans Hauman, for the sum of $1,150, in the District Court of Scott County, upon which judgment an execution had issued, and under which the property claimed now as the property of plaintiff, being a part of the same specified in the mortgage, was levied upon by the defendant Leonard, as sheriff, and sold at public sale, and the proceeds applied to the payment of the confessed judgment.

Defendants claim that said property was, at the time of the levy, in the possession of, and owned by the mortgagor, Veiths, and that any title under which the plaintiff claimed was, as against Hauman, a creditor of Veiths, fraudulent and void.

To this answer the plaintiff replied, and alleged that the judgment, execution and levy, under which the defendants justify, were void as against plaintiff; that, at the time of the levy, the plaintiff was the owner and in the possession of the goods named in the petition; that the judgment by confession was void, first, for the reason that there was no sworn statement of facts filed, out of which the indebtedness arose, and second, that the said judgment was obtained through fraud and by collusion of Nicholas Veiths, one Asmus Veiths, his brother, and the defendant Hauman; that such confession was made upon a note given by Nicholas to Asmus, and assigned to Hauman, and was without consideration, but was given for the purpose of procuring said judgment and levy, for the benefit of said Nicholas.

To this replication there was a rejoinder, and, upon the issues thus made, a trial was had, and, under the instruction of the court, there was a verdict for the plaintiff, and the defendant's appeal.

*Grant & Smith* for the appellant.

I. The taking of the quit-claim deed subsequent to the execution of the mortgages, and without proof or evidence of any new consideration passing between the parties to the conveyance, is *ipso facto* an extinguishment, not only of the mortgage or incumbrance upon the land, by reason of the fee being vested in the same person holding the incumbrance, but of the debt also. Whatever may have been the understood or implied intention, if it were not *expressed*, the implied intent or design will not be considered. Ld. HARDWICKE in *Chester* v. *Willis*, Ambler, 246; *James* v. *Morey*, 2 Cow., 246; 1 Hill. Mort., 329, § 62; *Jackson* v. *Tift*, 15 Geo., 557; *Gardener* v. *Astor*, 3 John. Ch., 53; *Starr* v. *Ellis*, 3 Id., 393.

II. The court erred in refusing to give the third and fourth instructions asked by the defendant.

III. The court erred in refusing to give without modification the fifth and seventh instructions asked by the defendant, touching the validity of the chattel mortgage.

IV. The possession of personal property by the mortgagor in a chattel mortgage, for his own benefit, renders the mortgage fraudulent and void, as to other creditors; *Clow* v. *Woods*, 5 S. & R., 280; *Portland Bank* v. *Stubbs*, 6 Mass., 422; *Jewett* v. *Warren*, 12 Id., 300; *Many* v. *Killough*, 7 Yerger, 440; *Patten* v. *Smith*, 5 Conn., 196; *Swift* v. *Thompson*, 9 Id., 276; *Mills* v. *Camp*, 14 Id., 218; *Carpenter* v. *Mayor*, 5 Watts, 483; *Morris* v. *Hyde*, 8 Vt., 352; *Kendall* v. *Sampson*, 12 Id., 515; *Rogers* v. *Vail*, 16 Id., 327; *Wordell* v. *Smith*, 1 Camp., 332; *Powers* v. *Green*, 14 Ill., 386; *Twyne's Case*, 1 Smith's L. C., 47; *Gardner* v. *McEwen*, 19 N. Y. R., 123; *Freeman* v. *Ransom*, 5 Ohio State, 1; *Collins* v. *Myers*, 11 Id., 547; *Edgell* v. *Hart*, 5 Seld., 213; *Reed* v. *Eames*, 19 Ill., 594; *Kitchell* v. *Bralton*, 1 Scam., 300; *Edgell* v. *Hart*, 13 Barb., 380; *Harris* v. *Sumner*, 2 Pick., 129; *Bunklin* v. *Thompson*, 1 J. J. Marsh., 222; *Griswold* v. *Sheldon*, 4 Com., 581.

V. In law, a judgment by confession or otherwise, standing upon the record of a court, cannot be collaterally attached. *Gilman* v. *Hovey*, 26 Mo., 280; *Diehl* v. *Page et al.*, 2 Green's Ch., 147; *Shottenkirk* v. *Wheeler*, 3 John. Ch., 275; *De Reuner* v. *Cautellon*, 4 Id., 85; *Stephenson* v. *Rodney*, 5 Har., 150; *Whitwell* v. *Bardner*, 7 Cal., 54; *Kennedy* v. *Lowe*, 8 Iowa, 580; *Halbut* v. *Grant*, 4 Monr., 580; *McKimly* v. *Combs*, 1 Id., 106, 281; *Hendrick* v. *Robinson*, 2 John. Ch., 283; *Brinkerhoff* v. *Brown*, 4 Id., 671. It cannot be questioned by a creditor who has not reduced his claim to judgment. *Greenway* v. *Thomas*, 14 Ill., 271; *Green* v. *Conegay*, 4 Jones (N. C.), 66; *McDernett* v. *Strong*, 4 John. Ch., 687; *Wiggins* v. *Armstrong*, 2 Id., 144; *Lanton* v. *Levy*, 2 Ed. Ch., 197. It is conclusive until set aside. *Delaney* v. *Reade*, 4 Iowa, 292; *Rounds* v. *Hunt*, 24 Ill., 598.

Wilhelmi v. Leonard.

*John N. Rogers* and *Dow & Brown* for the appellee.

1. The exceptions to the judge's charges as given, and to his refusal to charge as requested, being general, (that is, to the whole charge, and to the refusal to give all the instructions asked,) and not pointing out any particular error complained of, are unavailing to bring any part of the charge or instructions complained of before this court for review. *Oliver* v. *Phelps,* 1 Zab. (N. J.), 597; *Haggart* v. *Morgan,* 1 Seld., 422; *Jones* v. *Osgood,* 2 Id., 233; *Hunt* v. *Maybe,* 3 Id., 266; *Hart* v. *The Rensselaer and Saratoga Railroad Company,* 4 Id., 37; *Caldwell* v. *Murphy,* 1 Kern., 416; *Dicker* v. *Matthews,* 2 Id., 313.

II. Where a mortgagee takes a quit-claim deed of the estate conveyed by his mortgage, the whole estate is vested in him, and the mortgage and the mortgage debt are extinguished unless the intention of the parties or the interest of the mortgagee intervene to prevent the merger. *James* v. *Morey,* 2 Cow., 246; *Gibson* v. *Orehore,* 3 Pick., 475; *Eaton* v. *Simonds,* 14 Id., 98; *Wickersham* v. *Reeves & Miller,* 1 Iowa, 413. When the mortgagee takes a conveyance of a part of the mortgaged property, the debt is discharged only *pro tanto.*

III. Appellant cannot claim under a mortgage, the validity of which he at the same time attacks.

IV. The possession of personal property mortgaged by the mortgagor, with a power to dispose of the same, does not of itself render the mortgage fraudulent. It may be shown in connection with other circumstances to prove *actual* fraud. *Kuhn* v. *Graves,* 9 Iowa, 303; *Torbert* v. *Hayden,* 10 Id.

V. It was competent for the plaintiff to show in evidence that the judgment by confession was *fraudulent in fact. Dutchess of Kingston's case,* 2 Smith's L. C., 508 (marg., 432); *Burnell* v. *Johnson,* 9 John., 243; *Crary* v. *Sprague,*

12 Wend., 41; *The State* v. *Fife*, 2 Bailey, 337; *Atkinson* v. *Allen*, 11 Verm., 619.

VI. A failure to comply with the statute in the written statement filed under a judgment entered upon confession a nullity. *Kennedy* v. *Lowe and Creel*, 9 Iowa, 580; *Edgar* v. *Greer*, 10 Id., 279; S. C., 7 Id., 135; *Bernard & Co.* v. *Douglas & Watson*, 10 Id., 370; *Wilson* v. *Davis*, 1 Mich., 156; *Austin* v. *Grant*, Id., 490; *Beech* v. *Bottsford*, 1 Doug. (Mich.), 199; *Terry* v. *Filer*, 8 Wend., 569; *Durnham* v. *Waterman*, 17 N. Y., 9.

BALDWIN, C. J. — The first error assigned, is, that the court erred in sustaining an objection to a question asked the witness, Henry Ott, upon the cross-examination. The witness is asked whether plaintiff did not tell him at or about the time of the levy, that he knew the property levied on belonged to Veiths, and his creditors could hold it. The plaintiff objected to this question upon the ground that it was not proper upon cross examination, as no such conversation was referred to on the direct examination. The evidence is not before us in the shape of questions and answers, but is detailed in the record in a narrative form, the questions asked not given, but the substance of the answers only are stated. We are unable to determine from the record that the plaintiff, on the direct examination, called out any conversation in relation to what the plaintiff had said to said witness, about the property belonging to Veiths, and that his creditors could hold it. If, as maintained by counsel, the record showed a partial conversation upon this subject, elicited by the plaintiff, there is no question as to the right of the defendants to the whole of such conversation. From the record before us, we are not satisfied that the court erred in refusing to allow the question to be asked.

The instructions asked were each refused, except in so far as they were given in the charge of the court.

The second error assigned, is the refusal of the court to give certain instructions asked; and the third assignment, is that the court erred in its charge to the jury. These errors are argued by counsel in connection with each other, and we propose to follow this order, as far as we can.

The instructions asked are very lengthy, each being hypothecated upon a complicated statement of facts, as detailed by the testimony. The charge of the court is also very full, covering some twenty-two pages of the record.

As the instructions asked are marked refused, except so far as they are given in the charge of the court, it becomes necessary to consider those instructions asked, and those given, at the same time, in order to determine whether the court omitted to charge the jury correctly, upon the propositions asked by the defendants. We are necessarily confined to a mere statement of these propositions, as their extreme length would not admit of their being given by us in detail.

A preliminary question is raised by the counsel for the appellee, as to the form of the exceptions by the appellants to the charge of the court. It is objected that the exception is to the whole of the charge, and that it fails to point out specifically the particular portions that are claimed to be erroneous. Prior to the adoption of the Revision, this manner of excepting to the charge of the court, that is, by a general exception, was held to be sufficient, and would entitle the party thus excepting to present to this court for its review an erroneous position in any portion of the charge of the court. See *Eyser* v. *Weissgerber*, 2 Iowa, 463. This same preliminary question was presented for our consideration in the case of the *Gas Light and Coke Co.* v. *The City of Davenport, ante.* It was held, in that case, that under the provisions of §§ 3058 and 3059, of the Revi-

sion, a general exception to the charge of the court presented no question for our consideration, unless the whole of such charge was erroneous. This action, however, was commenced prior to the taking effect of the Revision, and under § 4172, either party can claim the right to have the cause determined under the law in force prior to the taking effect of the Revision.

From the pleadings and evidence, it appears that the plaintiff, to secure the debt due him from Nicholas Veiths, had taken not only the chattel mortgage, as above stated, but also a mortgage upon certain real estate. This land was encumbered by a prior deed of trust to one Darlington, executed by Veiths. The land was sold by Darlington, under the trust deed, and purchased by the plaintiff. Subsequent to this sale, Veiths quit-claimed all his right, title and interest in this land, to the plaintiff. Upon this state of facts, the defendants asked the court to instruct the jury, that if, when plaintiff took from Veiths a quit-claim deed of the land mortgaged by Veiths to him to secure the same debt secured by the chattel mortgage, under which plaintiff claims, and there was no agreement between them to keep the debt subsisting, the debt, and the lien of the chattel mortgage as incident thereto, were thereby extinguished.

The court, in its charge, upon this point instructed the jury, that taking the quit-claim deed satisfied the debt, if such was the intention of the parties, and that it would also presumptively satisfy it, if there was no intention to keep it alive and subsisting; that the intention of the parties was to be gathered, by the jury, from all the circumstances of the transaction, and the acts of the parties cotemporaneous with and subsequent to the making of the quit-claim deed; the interest of the parties; why the notes which evidenced the debt were not surrendered, &c., &c. That if the jury found that it was the intention of the

parties that the taking of the quit-claim was in satisfaction of the plaintiff's debt, or that the plaintiff had no interest or intention to keep alive his mortgage when he received the quit-claim deed.

In the case of a mortgage upon real estate, we believe the rule to be that when a mortgagee purchases or takes a release of the equity of redemption, the whole estate is vested in him, and the mortgage is extinguished, and with it the mortgage debt, unless intention or interest in the mortgagee intervenes to prevent the merger. See *James* v. *Morey*, 2d Cow., 246. This must, however, depend upon the express or implied intention of the parties in whom the estates unite. See *Gibson* v. *Crehore*, 3 Pick., 475.

In the case of *Wickersham* v. *Reeves & Miller*, 1 Iowa, 413, in which it was claimed that the mortgage had been extinguished by a purchase of the legal title, ISBELL, J., in delivering the opinion of the court, says: " We think this view is not sustainable. The evidence clearly shows that this was not the intent of the parties to the sale of the legal title to petitioner, nor was it for the interest of the petitioner. We therefore conclude that this mortgage continues to exist as a lien on the premises."

The cases cited by the counsel for the appellants to show that the extinguishment of the debt follows from the merging of the title in the mortgage, suppose the existence of but the one mortgage to secure the debt, and these authorities lay down the rule, that when a mortgagee takes a conveyance of *part* of the mortgaged property, the debt is extinguished only *pro tanto*.

In this case there were two mortgages, one chattel, the other on realty, to secure the one debt. Conceding the rule to be that the merger of the title in the mortgagee extinguished the lien, and, as incident thereto, the debt, so far as it was secured by the land, the rule we do not think will hold good so far as it applies to the chattel mortgage,

at least without some evidence of an intention to that effect, either express or implied. The controversy, in this case, is about the property embraced in the chattel mortgage, and the mere fact that the mortgagee, who was compelled to purchase in the real estate described in his mortgage at a trustee's sale, to secure himself in his subsequent lien, and who, by such purchase, had already acquired a title from the trustee, accepts of a quit-claim for the same property from the mortgagor, without evidence of a relinquishment of the debt, should not deprive him of his lien upon the other property mortgaged to secure the same debt. But conceding the rule to be as claimed by the counsel of appellants, that the acceptance of the quit-claim is *prima facie* evidence of an intention to relinquish the debt, yet we think this intention can be shown to be otherwise, by the surrounding circumstances attending the transaction. This was a matter of which the jury could inquire, and the court, we think, very properly so charged.

It is next assumed that the court erred in the refusal to give the third and fourth instruction asked by the defendants. These instructions substantially involve the same proposition. The court, in its charge, omitted to refer to the positions herein stated, and the question is whether or not these instructions should have been given, as asked.

When the chattel mortgage was executed, one of the notes secured thereby was given to Asmus Veiths. Afterwards this note was given up to the maker, and a new note for a larger amount, founded in part on the same consideration was given to the same payee, Veiths. A suit was brought upon this note by Hauman, the assignee, and the maker confessed the amount due, and consented to a rendition of the judgment thereon. No claim is made by Hauman for a foreclosure of the chattel mortgage, or that he have a lien upon the property therein described, by virtue of the security, but an ordinary judgment is rendered for the amount of the

note and interest. It is claimed by the counsel of defendants, in the instructions refused, that a levy on the mortgaged property, under such judgment, will hold the property, as against the lien of the other creditors in the mortgage, because, under the mortgage, the note first maturing, would in the application of the proceeds of the property, be entitled to priority of payment. We think that when the payee of the note secured by the mortgage gave up the same, and took a new one, and different in amount, and without any agreement to show that it was still to be secured by the chattel mortgage, he lost his right to the security, as against other creditors. The defendant denies the validity of the mortgage; claims that it was merged by the quit-claim; that it was a fraud upon the rights of other creditors, and we think he cannot claim the benefit of lien under a mortgage which he thus attacks. Independent of these considerations, we think the court did not err in refusing these instructions, because the lien of the judgment of Hauman exists only from the date of the rendition of the confessed judgment. Granting that the new note was still secured by the chattel mortgage, the defendants did not ask for a foreclosure of this mortgage, but relied upon the judgment alone as their security for the debt.

The fifth and seventh instructions asked, were substantially given by the court. Although the counsel claimed that they were so modified as to take away from them their essence, yet we think the court, in its charge, presents to the jury the questions therein involved, in a clear and correct manner, and even favorable to defendants.

The eighth instruction asked, involves the position that the possession of personal property by the mortgagor, in a chattel mortgage, for his own benefit, renders the mortgage fraudulent and void, as against other creditors. It is admitted that this instruction was given, but modified.

The court directed the jury, that the remaining in possession, of the mortgagor, did not render the mortgage fraudulent, recognizing the rule, as settled by this court, in the case of *Kuhn* v. *Graves*, 9 Iowa, 303; and *Torbert* v. *Hayden*, 11 Iowa, 435; and *Campbell* v. *Leonard*, Id., 489.

The court, however, charged the jury that there may be, notwithstanding the rule, as above laid down, a retention of possession under such circumstances as will be a badge or evidence of fraud. " If " says the court, " the retention after the debt is inconsistent with the nature of the property, if it is long continued; if meanwhile, the property is depreciating, and the debtor is getting the benefit of it, and no reduction of the debt secured by the mortgage is made, these circumstances, unless explained, and shown to be fair and honest, would, I think, justify a jury in inferring that the mortgage was not *bona fide*." Under the rule, as laid down by this court in the cases above cited, this charge of the court is certainly not unfavorable to the defendants.

The appellants next insist that the court erred in its refusal to charge the jury that the good faith of the judgment confessed by Veiths, to defendant, Haaman, could not be inquired into by the plaintiff in this proceeding, and that, so far as Haaman is concerned, it matters not whether the judgment was fraudulent, or otherwise.

The plaintiff claims that the defendant cannot justify taking the property, sued for, under the writ of execution, for the reason that the judgment upon which it issued was void, first in being irregular on its face, second, because it was obtained through fraud. The court, in its charge, directed the jury that they had nothing to do with the question as to whether the judgment was void, on account of the irregular manner in which it was obtained. Of this portion of the charge the defendant does not complain, as it

is in accordance with the instruction asked. The verdict of the jury being for the plaintiff, he makes no objection to this ruling. We do not, therefore, propose to determine the question as to whether the judgment is void upon its face. The court, however, instructed the jury that it was their province to inquire whether, in point of fact, the judgment, by confession, was fraudulent. We are inclined to the opinion, that upon principle, as well as upon authority, this ruling was correct. "Fraud is an extrinsic, collateral fact, which vitiates the most solemn proceedings of a court of justice." Lord COKE says it "avoids all judicial acts, ecclesiastical or temporal. In civil suits, all strangers may falsify for covin, either fines, or real or feigned recoveries, and even a recovery by a just title, if collusion was practised to prevent a fair defense." See Opinion of Lord Ch. J. DE GRAY, in the "Duchess of Kingston's Case," 2 Smith's Leading Cases, 508. Where a judgment and execution were obtained upon a fraudulent contract, and the sheriff is sued for a false return of the execution, on account of paying the money to another execution creditor, held it was competent to show the fraud in defense. PARSONS, C. J., says: "The judgment appears to be fraudulent against creditors; any creditor on whom it is a fraud may give the facts in evidence, and if the creditor would be defrauded by it, the defendant, (sheriff,) whom he has indemnified, may give them in evidence." See *Pierce* v. *Jackson*, 6 Mass., 242; *Gregg* v. *Bingham*, 1 Hill S. C., 299; *Bunell* v. *Johnson*, 9 John., 243; *Craig* v. *Sprague*, 12 Wend., 41; *Atkinson* v. *Allen*, 11 Vermt., 619. Nor do we think that the rule urged by the defendants, that the plaintiff cannot attack the judgment without judgment and execution in his favor, will apply in this case. The plaintiff relies upon the chattel mortgage, as giving him a right to the possession of the property seized under the execution. He has no judgment, nor does he desire

one. By his possession, he has acquired every right that he can obtain by virtue of his security. The defendants attack the validity of the plaintiff's title, and the plaintiff certainly has a right to show that the defendants' claim is based upon a fraud.

The court properly directs that none but *bona fide* creditors can attack a mortgage as fraudulent, and that defendants, unless they were *bona fide* creditors, could not molest the plaintiff in his possession.

The next error assigned is, that the court erred in overruling the defendants' motion for a new trial. This motion is based upon the grounds usually assigned as causes for a new trial.

We cannot say that the verdict was against the evidence. There is, to our minds, sufficient evidence to show that the plaintiff's chattel mortgage was taken in good faith, and for a proper purpose. He had a right, under the rulings of this court, based, as they are, upon a statutory provision, to leave the property mortgaged in the possession of the mortgagor, without such possession being evidence of fraud, although we think that the jury had good cause to conclude that before the levy of defendants, the property was not in the possession of Veiths. This mortgage, being duly executed and recorded, and given for a good consideration, the right of the plaintiff to the possession was complete prior to the date of defendants' judgment, even if the defendants should show that it was not obtained through fraud.

It is claimed that this motion should have been sustained, because the special findings of the jury are in conflict with their general verdict, and that the judgment of the court should have been rendered in favor of the defendants, upon these special findings, *non obstante veredicto*.

We need only say, in answer to this position, that not all of the issues made by the pleadings were submitted to the jury for their special findings. For instance, it does not

appear that the jury found specially, whether the judgment by confession was obtained by fraud. If they did so find, and we think they could have so found from the evidence, the verdict should have been for the plaintiff, notwithstanding their finding upon the special issues. But the record shows that four of the special issues, out of the five submitted, were found by the jury favorable to the plaintiff, and we could readily justify the judgment for plaintiff upon these special findings.

Affirmed.