TORBERT v. HAYDEN, Sheriff, &c.

1. CHATTEL MORTGAGE. A chattel mortgage under which the mortgagor retains the possession and power to dispose of the mortgaged property is not fraudulent *in law*.

*Appeal from Dubuque District Court.*

THURSDAY, APRIL 11.

On the third day of March, A. D., 1858, the plaintiff in this

action sold and conveyed to the firm of Shelly & Grosvenor of the city of Dubuque, two thousand and eighty acres of land situated in the State of Wisconsin, for the consideration of four thousand one hundred and sixty dollars, and took therefor their two promissory notes, each for the sum of $2,080, one payable in six, the other in twelve months after date.

To secure the payment of these notes, the said Shelly & Grosvenor executed a chattel mortgage on their stock of goods, in the city of Dubuque, consisting of books and stationery, a schedule of which was annexed to the mortgage, and both duly recorded in two days thereafter.

On the 8th day of April of the same year, three of the creditors of Shelly & Grosvenor sued out their several writs of attachment, which were duly levied by the Sheriff on said stock of books and stationery. Subsequently an action of replevin was brought by plaintiff to recover of the defendant, the Sheriff, the possession of these goods; which was tried at the May Term, 1859, of the District Court of said county. Judgment for the defendant, from which the plaintiff appealed. The remaining facts in the case will appear in the opinion of the court.

*Wilson, Utley & Doud* for the appellants.

This mortgage was valid as against creditors when duly executed and filed for record. Code of 1851, Section 1193. The legal title and right to the possession thereby passed to the mortgagee. Code of 1851, Section 1210. Third persons were affected by the recording of the mortgage as they would have been by an actual transfer of the legal title. Section 1195.

A chattel mortgage under the laws of this State can be avoided only for fraud *in fact*, which must be found by the jury. *Griswold* v. *Sheldon*, 4 Com. 581 ; *Briggs* v. *Parkman*, 2 Met. 258; 3 Ib. 515 ; *Abbott* v. *Goodwin*, 7 Shepl. 407, 411 ; *Jenks* v. *Goffee*, 1 R. I. 511, 1 Hilliard Mort. 238;

*Brooks* v. *Powers*, 15 Mass. 244 ; *Jackson* v. *Zimmerman*, 7 Wend. 436 ; *Seward* v. *Jackson*, 8 Cow. 406 ; *Jackson* v. *Peck*, 4 Wend. 403 ; *Hind* v. *Longworth*, 11 Wheat. 199 : 10 Ves. 145 : 4 Barn. & Cres. 652 ; *Coburn* v. *Pickering*, 3 N. H. 415 ; 7 Mo. 151 : 4 Greenl. 152 ; *Smith & Hoe* v. *Acker*, 23 Wend. 653.

The cases of *Ford* v. *Williams*, 3 Ker. 577 ; *White* v. *Cole*, 24 Wend. 116 ; *Collins & McElroy* v. *Myers, et al*, 16 Ohio 547, arose under statutes different from ours and they are therefore inapplicable.

*Samuels, Allison & Crane*, and *John L. Harvey* for the appellee.

The mortgage to plaintiff was of no validity whatever, there having been at the time of its execution an oral agreement between the parties, that the mortgagors should remain in possession of the property mortgaged, and sell and dispose of the same as he had done before.

1. The power to sell and dispose of the mortgaged property is absolutely inconsistent with the nature of the conveyance, and renders it a nullity.

2. To permit the mortgagor to sell the property mortgaged, and appropriate the proceeds to their own use, must necessarily hinder, delay and defraud creditors ; and parties are always presumed to contemplate the necessary and probable consequences of their own acts. *Collins* v. *Myers*, 16 Ohio 547 ; *Freeman* v. *Rawson*, 5 Ohio S. 1 : *Harman* v. *Abbey*, 7 Ib. 218 ; *Griswold* v. *Sheldon*, 4 Cow. 581 ; *Edgell* v. *Hart*, 5 Seld. 217 ; S. C. 13 Barb. 380; *Ford* v. *Williams*, 3 Ker. 577 ; *Wood* v. *Lowry*, 17 Wend. 492 ; *Stoddard* v. *Butler*, 20 Wend. 505 ; *Delaware* v. *Ensign*, 21 Barb. 85 ; *Jordan* v. *Turner*, 3 Blackf. 309 ; *Bowen* v. *Clark*, 5 Law Reg. 206; *Pajet* v. *Pirchard*, 1 Esp. 205 ; *Morral* v. *Smith*, 1 Camp. 332 *Davis* v. *Ransom, et al*, 18 Ill. 400 ; *Read* v. *Wilson*, 22 Ib. 377 ; *Welsh* v. *Bckeley*, 1 Pen. & W. 57 ; *Somerville* v. *Morton*, 4 Yerg. 544 ; *Robbins* v. *Parker*, 3 Met.

.117 ; *Simpson* v. *Mitchell,* 8 Yerg. 418 ; *Coburn* v. *Pickering,* 3 N. H. 415 ; *Laughlin* v. *Ferguson,* 6 Dana 120 ; *Ayres* v. *Moore,* 2 Stewart 336.

LOWE, C. J.—This case seems to have turned chiefly upon a few propositions of law laid down by the court to the jury; to understand which more fully it may be well to state some additional facts disclosed on the evidence and admitted by the parties as making up a part of the history of this case.

*First.* That all the land aforesaid sold and conveyed by plaintiff to Shelley & Grosvenor except one hundred and twenty acres, had been sold and re-conveyed by them to their creditors in payment of their liabilities at the rate of three dollars and a half to five dollars per acre.

*Second.* That the stock of goods mortgaged to secure the payment of $4,160, was estimated to be worth about $9,000. That Shelly & Grosvenor remained in possession after the execution of the mortgage, and sold with the knowledge of the mortgagee about one thousand dollars worth of books and stationery, between the execution of the mortgage and the levy of the attachments aforesaid, the proceeds of which were applied to their support and the rent and expenses of the store.

*Third.* The good faith or honesty of the transaction between the parties to the mortgage, was not impeached by any evidence whatever.

Upon the foregoing facts the court gave, among others, the following instructions to the jury, as applicable to the law of the case :

1. " A mortgage of personal property which gives to the mortgagor the possession of, and the right to sell, the mortgaged property, and deal with it as his own, is fraudulent and void as against the other creditors of the mortgagor."

2. " If the power of disposition appear upon the face of .the mortgage, is fairly to be inferred from its provisions, or

it is agreed by the parties at the time the mortgage was executed—in either of these cases, when the fact is made to appear, the mortgage is fraudulent in law, irrespective of the intention of the parties."

3. " Where there is a just debt, and no fraud manifest or inferrable, and the mortgage permits the mortgagor to retain possession, and to dispose of the mortgaged property for his own use, beyond what would pay him, the mortgagor, a reasonable amount for his services, still it would be your duty to find that the transaction was fraudulent."

4. " If the jury believe from the evidence that at the time of the execution of the mortgage the parties thereto agreed that mortgagors should remain in the possession of the property mortgaged and continue to sell and dispose of the same as their own, and appropriate the money to their own use, and that they in fact did these things in pursuance of said agreement, or with the knowledge and permission of the mortgagee, then the mortgage is absolutely fraudulent and void as to existing creditors, and they must find a verdict for the defendant.

The other instructions for the defense contain nearly the same general proposition of law presented in different language and form.

Although these instructions harmonize with the English common law doctrine, and have for their authority quite a number of American decisions, yet we have not been able to reconcile the principle they contain with the true meaning and object of our code; which in some respects is unlike the provisions of any other statute we have seen, and which we are inclined to believe was intended perhaps to relieve the question involved of the difficulties that have always surrounded legal or presumptive frauds arising from the possession by the debtor of property mortgaged, and which has been the fruitful source of much discussion and of many and conflicting decisions.

It is very evident that the bare possession of mortgaged

property, personal in its character, by the mortgagor, is not presumptively fraudulent under the Code of 1851, because it not only permits such possession, but substantially declares (section 1193) that such possession shall be valid against existing creditors and subsequent purchasers, provided the mortgage shall be duly executed, acknowledged and recorded in the county where the holder of the property resides—which was done in this case. The legal effect of such recording as to third persons is expressly declared by section 1195 in the same chapter in the Code, to be the same as though the execution and delivery of the mortgage had been accompanied by the actual delivery of the property mortgaged. That is to say, under the circumstances stated, the rights of creditors or purchasers as it respects the property mortgaged would be no greater or different when the possession of the property was retained by the mortgagor, than if it had been delivered, and the possession held by the mortgagee.

Under such a statute, making the possession of the mortgagor equivalent to that of actual delivery to the mortgagee, it is most difficult to conceive how the retention of possession by the mortgagor can ever, under any circumstances, be regarded a fraud in law; for the plain reason that such possession is not only authorised, but explained by the statute itself, and therefore cannot be inconsistent with the rights of the parties or the nature and purposes of the transaction.

On the other hand it is easy for us to conceive how such a mortgage may be fraudulent in *fact* whether the possession of the property be in one party or the other, and notwithstanding it may be regularly executed, duly recorded and all fair upon the face; yet such fact or fraudulent intent, must be shown by extrinsic evidence and pronounced by the jury. But in doing so the jury could infer nothing from the possession of the property by the mortgagor, for this would be entirely consistent with the authority of the statute, if the

parties had duly complied with the terms thereof. The manner however of the possession would be a proper subject of inquiry. If it was accompanied with the power of disposition, or used in any way inconsistent with the object of the security of the rights of the mortgagee, these would be badges of fraud, not absolute, but *prima facie*, requiring explanation.

For instance if a livery stock of horses and carriages is mortgaged for a sum very much less than their intrinsic value, and possession retained by the mortgagor, with the right of use, it will not follow, the first being lawful, that a reasonable use of that possession would be incompatible with an honest purpose, but rather a necessary incident flowing from the right of possession under the law.

Again, if a large and valuable stock of merchandise is mortgaged for an inconsiderable amount, the mortgagor being in possession might dispose of quantities of these goods without in the slightest manner impairing the mortgagee's security. As long as there is an abundance left to secure the mortgage debt, the mortgagee may permit the mortgagor to sell without forfeiting his rights under the mortgage. Such a use or such a sale of the mortgaged property, not materially affecting the value of the security is not necessarily inconsistent with a good purpose or the ordinary course of business ; and the law, like the charities of our religion "thinketh no evil" as long as there is equal room to impute honest motives. Whether, therefore, possession with the right to deal with the property as his own is fraudulent in a mortgagor, is a question of intent, and will depend entirely upon the circumstances explaining such acts of ownership.

If a stock of goods is mortgaged to their whole value and the mortgagor is permitted to hold possession, sell and pocket the proceeds, such acts would be wholly irreconcilable with the object of the mortgage and the interest of the mortgagee; and the inference that the mortgagor had a

secret or beneficial interest reserved, would perhaps be irresistible.

These illustrations show, as we think, to a limited extent, the soundness of the rule, that whether a chattel mortgage under our statute, when the mortgagor holds possession and deals with the mortgaged property as his own, is fraudulent or not, is a question of fact for the jury and not one of law for the court.

Now, the foregoing instructions were framed and given upon the theory that the consent of the mortgagee that the mortgagor should hold possession and deal with the mortgaged property as his own was a fraud in law against the rights of execution creditors, and as such the mortgage was void. These instructions have for their authority the law as it was pronounced in the cases of *Collins and McElroy* v. *Myers, et al,* 16 Ohio, 547 and *Freeman* v. *Rawson,* 5 Ohio State, 1.

These cases are specially referred to, because more directly in point than any of the authorities referred to by the defense in this case, and for the reason that the very language of the doctrine laid down in those cases is incorporated in these instructions.

The Ohio statute does not make the retention of possession by the mortgagor equivalent to an actual delivery of possession to the mortgagee, and hence the legal effect of possession by the mortgagor, there so far as the rights of third persons are concerned, must be somewhat different from what it is here. We conclude therefore that a decision in Ohio upon the points under consideration, or that of any other State having a statute so essentially different from ours, could not be very safely adopted as a rule for the interpretation of the law of chattel mortgages in this State.

In the case reported as above, in 16 Ohio, Judge READ, speaking of the legal effect of possession by the mortgagor coupled with the power of use and sale, uses the following

language: "He may dispose of the property, defeat the mortgage, and put the money in his own pocket; but if he refuses to pay a debt, and you seize the property in execution against his will, the mortgage steps in and restores it to the debtor. The whole matter then appears to rest upon the option of the debtor, to appropriate the mortgaged property to the payment of his debt or not, and not upon the mortgagee."

In a later case reported as above, in 5 Ohio State, Judge RANNEY remarks: "To hold such a mortgage valid would enable the debtor to do business upon a capital within the limits of the mortgage debt, at the will of the mortgagee, and would furnish a complete shelter under which a man could carry on trade for his own benefit, completely protected from the payment of his debts, and placed wholly beyond the reach of his creditors.

These are the prominent reasons assigned for holding in Ohio that a mortgage is invalid or fraudulent in law, where the right of sale is conferred upon the mortgagor, or such right is exercised with the permission of the mortgagee. If such really are the legal consequences that flow from the exercise of such a power under their system of laws, then no fault we apprehend can be found against the correctness of their decision. But as we understand it, the same consequences cannot follow under our system of remedial justice. It is true that if the mortgagor is permitted to deal with the property as his own, the mortgage security is not altogether safe or certain; much is necessarily left to the honesty and good faith of the debtor, but if this confidence is abused, it is the misfortune of the mortgagee, and furnishes no ground of complaint as to other creditors. They are no worse off than they would have been if no mortgage had ever been executed. To them it can make no difference whether the mortgaged property is in the possession of the mortgagor or mortgagee. In neither event is the property altogether beyond their reach or control, as it is stated to

be under the Ohio laws. It surely would be competent for the creditor, before forfeiture, to pay the mortgage debt, and then seize; or if a forfeiture had taken place he would have the right to tender the amount, and if refused, to go into chancery to redeem the incumbrance at any time before the equity of redemption was barred by a foreclosure and sale.

Nor is this all. While the sheriff could not levy upon and sell any interest which the mortgagor may have in the mortgaged property, for the reason that he could not deliver possession, or take the possession from the mortgagee until his claim was satisfied, yet inasmuch as under the Code, section 1210, the title and right of possession in the case of the mortgage of personal property are both in the mortgagee ; and as section 1195 declares that after the record of such mortgage the legal effect of possession by the mortgagor shall be the same as though it had been accompanied by actual delivery of possession to the mortgagee, we can perceive no reason why the mortgagee, holding as he does the legal title, which draws to him the possession which for that reason is under his control, may not be garnished and required to answer the amount of his claim yet unpaid, the amount and value of the property he holds as security for the same ; and if above the amount of his claim, then that he should be held responsible from the service of the garnishment for the sale or disposition of any property thus mortgaged, over and above the payment of his own claim.

This course of procedure would require, perhaps, the mortgagee to assert his rightful dominion over the property in order to protect himself. And it would be competent also in a case of this kind, we apprehend, if it would conduce to the rights of all the parties concerned, for the court to appoint a receiver whose duty it should be to take the custody of said property, and under the direction of the court to dispose of it, first liquidating the mortgage debt, and

afterwards applying the residue to the satisfaction of the claims of the garnishing creditors.

If it should be said that whilst such a course of procedure might properly be pursued before forfeiture, yet it could not be after such forfeiture, for then the title vests absolutely in the mortgagee, the reply to this is, that after all a chattel mortgage is but a security for a debt; and if in equity a creditor could compel a mortgagee after forfeiture and before sale under a foreclosure to receive his debt and release the property why may not a court of law, now brought into such intimate and close relations with a court of equity under our reformed system of remedial justice, exercise the same power in a more simple and direct process of garnishment. The rights of all the parties could be as well guarded and promoted in one jurisdiction as the other.

The remedies for the creditor, when the mortgagor retains possession with the right to dispose of or use the property, are suggested for the purpose of showing that under our system of jurisprudence, the hardships and injurious consequences which it is claimed result from possession in other States, whose decisions were followed by the court below, in this case, do not necessarily exist under our law.

But in addition to this, it is conceded that if the parties to the mortgage had a fraudulent intent in creating the lien to hinder and delay other creditors, and thereby confer advantages upon the mortgagor which he would not otherwise possess, this would be a fraud in fact, which, when pronounced by a jury under the evidence, would render the mortgage void and enable the creditors at once to levy upon or attach the property.

This however presents a very different state of case from possession by a mortgagor in good faith, in accordance with the provisions of positive law. To deprive the creditor in such case of his security simply because the debtor exercised the power of disposition would not only defeat the object and policy of the law, but make the law itself

a cheat to mislead and entrap the honest and vigilant creditor.

Possession by the debtor under such circumstances is on the other hand a *statutory right* founded upon the mutual convenience and interest of the parties, intended for a beneficial purpose, carrying with it as a logical sequence the use of the only means which he could employ by virtue of such possession to pay his debts 9 Iowa, 304.

Naked possession without the power of use or sale would be a *barren* right equally productive of mischief to both parties, tying the hands of the debtor and suppressing all effort to realize from the property the money requisite to extinguish the debt.

In the case before us it is conceded that there was no fraudulent intent to prejudice in any way the rights of the creditors. So far from this the creditors had in fact been largely. benefitted by the arrangement. Some seven or eight thousand dollars of their claims had been satisfied out of the proceeds of the land which Shelly & Grosvenor had obtained from plaintiff, and for the purchase money of which they had mortgaged their stock of books, &c.

To permit this mortgage now to be defeated by a mere inference of legal fraud, which cannot in our opinion be indulged in under our system of remedial justice and law of chattel mortgage, would be unjust, illegal and oppressive.

Judgment reversed and cause remanded.