## Hughes v. Cory, Administrator.

1. **Mortgage: PERSONAL PROPERTY.** Under the statute, the mere retention of the possession by the mortgagor of personal property mortgaged when the instrument is recorded, is neither *per se* fraudulent, or a *badge of* fraud *in law.* It may be a circumstance, with others, to prove fraud *in fact.*

2. —— **USE BY MORTGAGOR.** A reasonable use of the mortgaged property by the mortgagor does not render the mortgage fraudulent *per se* or constitute fraud in law, especially where it is not necessarily consumed in the very act of using.

3. —— **RIGHT TO SELL RESERVED.** A mortgage of personal property contained: 1st. A reservation by the mortgagor of the right to sell before default, in the usual course of retail trade, the mortgagee agreeing to keep the property up to its then value. 2d. A reservation by the mortgagor of the right to retain in his. hands the avails of the sales, thirty-three per cent of the same to be applied on the notes secured by the mortgage. *Held,* That the mortgage was not *fraudulent on its face.* These reservations may be considered in connection with other circumstances tending to prove the fact.

*Appeal from Winneshiek District Court.*

TUESDAY, JUNE 12.

CHATTEL MORTGAGE: RETENTION OF POSSESSION BY MORTGAGOR WITH RIGHT .TO USE AND SELL (BY RETAIL, IN THE . USUAL WAY), NOT "CONCLUSIVE" EVIDENCE OF FRAUD. — The plaintiff, a creditor of one G. S. Dayton, in April, 1865, attached certain merchandise as the property of Dayton; and in June following, obtained judgment against him for $1,669$\frac{76}{100}$, and costs. At, and *prior* to the

time this attachment was made, Reuben G. Cory held, upon the same merchandise, a chattel mortgage executed to him by the said Dayton. This mortgage was duly acknowledged and recorded, and will be more fully alluded to presently. Cory had deceased at the time of the levy of the attachment, and the defendant, Charlotte M. Cory, as his administratrix, with the other defendants, as sureties, executed a forthcoming bond conformably to section 3219 of the Revision, and obtained the possession of the goods.

The present action was brought "by the plaintiff upon *this bond*, alleging the recovery of judgment against Dayton and the non-delivery of the property within twenty days, &c.

The answer, based upon section 3221 of the Revision, alleges that the goods mentioned in the petition, for the delivery of which the bond in suit was given, did not at the time of the levy belong to Dayton, against whom the attachment was issued, but did belong to the defendant, Charlotte M. Cory, as administratrix.

On the trial, the defendants to sustain this defense offered in evidence the chattel mortgage before referred to, from Dayton to Cory, dated November 16th, 1864, and recorded the same day. By this mortgage Dayton grants and conveys to Cory "all of the goods, wares, and merchandise of every kind, nature and description whatever, now contained in my store at Ossian, Winneshiek Co., Iowa, in the building owned by Elam Pease, *reserving* the right to sell from said goods in the usual course of retail trade, and agreeing to add to said stock by purchase of other goods, keeping and maintaining the assortment and amount of goods at about their present value, and further *reserving* the right and privilege of retaining in said Dayton's hands the avails of the sales of said goods, he (Dayton) agreeing to retain 33 per cent of the same as a fund with which to pay the notes herein

specified.    Upon condition, however, that the said Dayton shall pay to Cory his five notes dated November 5th, 1864, as follows: $1,269 due February 5, 1865; $1,269 due May 5, 1865; $1,269 due July 5, 1865; $1,269 due September 5, 1865; $1,269 due November 5, 1865.   And in case of the default of the payment of *either note*, or in case of my (Dayton) attempting to dispose of or remove said goods from said county of Winneshiek, then it shall be lawful for the said Cory to take immediate possession and sell said goods at public auction upon ten days' notice," &c.   The first note (the only one due at the time of the attachment), it seems, was paid and the four last offered in evidence in connection with the mortgage.

The District Court "held the mortgage to be fraudulent upon its face and void, and excluded the same as evidence," and rendered judgment for the plaintiff.

Defendants appeal.

*Thomas Updegraff* and *Reuben Noble* for the appellants.

*G. R. Willett* and *L. Bullis* for the appellees.

DILLON, J. — The only question presented for our determination is: Did the court err in holding the mortgage to be fraudulent on its face, and void as against creditors, and in excluding the same as evidence?

1. MORT-gage: personal property.

That such an instrument would, by the English courts, be deemed fraudulent at common law and under 13 Elizabeth, both because the mortgagor was allowed to retain possession and to make sales from the goods, must be admitted. *Twyne's Case*, 1 Smith Lead. Cas., with English and American notes; 2 Kent's Com., 516 to 531.

And in most of the American States such an instrument

would be treated as being at least presumptively fraudulent. This rule, deducing fraud as a conclusion of law from the simple retention of possession by the vendor or mortgagor, originated in England in a very early day, when there were no registry laws, or none requiring *such* instruments to be registered. It was founded upon public policy. That policy was to prevent a party from acquiring a false and deceptive credit on the strength of the possession of property which he had sold or mortgaged, and yet of which he retained the possession, enjoyment and apparent ownership. The statute of 13 Elizabeth did not declare that such retention would be fraudulent. This was a doctrine of the courts. That statute simply avoids all dispositions of property by a debtor contrived or made " to delay, hinder or defraud creditors."

No question in the law has occasioned more discussion, and more diversity of opinion and conflict of decision than the question : what is the legal effect of the retention of possession by a vendor or mortgagor of chattels? Without entering upon this field of interminable strife, we may say, generally, that there can be no doubt that, unless the rule is changed by statute, the mortgage in question would, by the force of authority, have to be pronounced presumptively, if not conclusively, fraudulent.

But it will be seen, on examination, that the statute has wrought great changes in the law, and to these changes we must now refer.

By section 2217, the mortgagor of chattels may, *by stipulation to that effect, hold the right of possession.* This is the fair and necessary implication from the language used. Under another section (2201), the *mortgagor* may *retain the actual possession* of the property mortgaged, and the instrument is, nevertheless, valid, *if duly executed, acknowledged and recorded.*

And another section (2203) declares that from the time such mortgage is duly filed and entered for record, "it shall be deemed complete as to *third persons*, and shall have the *same effect as though it had been accompanied by an actual delivery of the property mortgaged.*"

Now, under these statutes, "recording" (to adopt the language of a learned court construing an act almost literally the same as ours) "is a substitute for, and takes the place of, and repels all those imputations of fraud which would arise from the retention of possession by the grantor." *Bullock* v. *Williams*, 16 Dick., 33 (1834); *Forbes* v. *Parker*, 16 Id., 462; *Shurtliff* v. *Willard*, 19 Id., 202; *Smith* v. *Moore* (construing statute like ours), 11 N. H., 55 (1840); *Hirt* v. *Remick*, 11 Id., 285; *Claney* v. *Frazer*, 8 Gill. & J. (Md.), 398 (1837); *Hambleton* v. *Haynard*, 2 Har. & J. (Md.), 446 (1819); *Gregory* v. *Perkins*, 4 Dev. (N. C.), 50; *McGowen* v. *Hay*, 5 Litt. (Ky.), 239; *Laughlin* v. *Ferguson*, 6 Dana, 120; *Head, Hobbs et al.* v. *Ward*, 1 J. J. Marsh. 282.

And so it has accordingly been previously held by this court. *McGavran* v. *Haupt*, 9 Iowa, 83; *Kuhn* v. *Graves*, Id., 303; *Campbell* v. *Leonard*, 11 Id., 489; *Torbert* v. *Hayden*, Id., 435, 439, 440.

And the ground of the common law policy which was to prevent *secret* transfers of property is thus (by requiring transfers unaccompanied by change of possession to be recorded) removed. To secure notoriety, and to protect creditors and purchasers, the statute makes precisely the same provisions in relation to the transfer of *personal*, that it does in relation to the transfer of *real* property; and the record of each is presumed to be known to all. The mere retention of possession where the instrument is recorded, is, therefore, no longer either *per se* fraudulent, or a badge of fraud *in law*. It may be a circumstance with others to prove fraud *in fact*.

It seems to follow that a reasonable *use* of the property by the mortgagor, would not be fraudulent *per se*, or con-

2. — use by mort-gagor. stitute fraud *in law*, certainly where, as in *Campbell* v. *Leonard*, 11 Iowa, 489, the property can be used without, as in *Somerville* v. *Horton*, 4 Yerg. (Tenn), 53, and see 5 Humph., 496; 8 Yerg., 417; *Robbins* v. *Parker*, 3 Metc., 177; 5. Ala. (N. S.), 297; 6 Id., 178, *necessarily consuming it by the very act of using.*

Why should the statute give the right to the mortgagor to retain the possession of property which he cannot use? And what reasonable objection can be made to allowing such use? Is it not an advantage rather than an injury to creditors to allow the mortgagor to make a beneficial and reasonable use of the property, especially as the mortgage does not, as we shall presently show, prevent unsecured creditors from at any time attaching or levying either by garnishing the mortgagee, if in possession or control, or, after tender to the mortgagee, if this be requisite, seizing the property itself.

And this brings us to the important question principally

3. — right to sell reserved. discussed, whether the other special provisions in the mortgage in controversy, rendered it *fraudulent on its face?*

These provisions are: 1. A reservation by the mortgagor of the right to sell before default, *in the usual course of retail trade*, the mortgagor agreeing to keep up the stock to its then value. 2. A reservation by the mortgagor of the right to retain in his hands the avails of the sales, by agreeing to retain and apply 33 per cent of the same on the notes secured by the mortgage. Upon a critical examination of *Torbert* v. *Hayden*, 11 Iowa, 435; *Wilhelmi* v. *Leonard*, 13 Iowa, 330, 341; and *Adler & Brother* v. *Claflin, Mellen & Co.*, 17 Iowa, 191, we cannot distinguish this case in principle from them.

At the time *Torbert* v. *Hayden* was decided, the writer,

not sufficiently taking into account the effect and logical consequence of the various statutory provisions referred to, doubted its correctness.

Subsequent examination into the history and ground of the English rule in relation to constructive frauds in the transfer of personal property, in connection with these statutory provisions, has satisfied him that the decision is right; right in principle and sound as respects public policy.

Some of these reasons will be briefly submitted, without now attempting a full or exhaustive statement and enforcement of them. A transaction not fraudulent *in fact* should not be declared so *in law* unless upon very cogent reasons of public policy.

Do any such reasons exist in this case? We admit that if the instrument is fraudulent in fact, it is invalid, but this was not pretended. A mortgage may be fraudulent in fact because there is no real debt, or if one, because it is knowingly and purposely overstated, to deceive and keep off other creditors. When these *facts* are proved, fraud is an inference of law, and the jury is, under the direction of the court, bound to find it, or though there be a real debt, yet if it can be shown that the controlling motion and object in making and taking the mortgage was not to secure the debt, but to hold the instrument as a shield to protect the debtor from his other creditors, this would make the mortgage fraudulent. The court should so instruct, and the jury so find.

These are merely instances of actual fraud, and other cases may easily be imagined. Any instrument is fraudulent which is a mere trick or sham contrivance, or which originates in bad motives or intentions, that is made and received for the purpose of warding off other creditors.

As against creditors, the mortgage must as before, be both *bona fide* and upon a valuable consideration.

But if the debt be real and the creditor, in good faith, desires security, what objection is there, in reason, to just such a transaction as that which is disclosed in the mortgage now before us? The debtor is a merchant. He cannot pay at maturity. He wishes time to dispose of his goods in the usual way, and to secure that and to prevent a sacrifice at forced sale, is willing to give one of his largest creditors a mortgage on his stock. There is no law, as perhaps there should be, requiring him to assign for the benefit of creditors generally; nothing to prevent any one or more of his creditors from suing and attaching his goods, and nothing to prevent his electing (a right which the law allows) to give one or more of his creditors a mortgage. He is acquainted with the stock, has a business established and can probably dispose of the goods more advantageously, both for himself and his creditors, than the mortgagee could himself do if he should take possession.

Why, we ask, should he not be permitted to stipulate for time and for the right to dispose of his goods and apply the proceeds to the payment of his debts?

No reason can be given, unless the arrangement be such, from its intrinsic nature or inevitable tendency, as unnecessarily and injuriously to affect or impair the rights of other creditors. "A creditor ought not," says GIBSON, J., in *Clow* v. *Woods*, 5 Serg. & R., 275, 280, "to be suffered to secure himself by means which will ultimately work an injury to third persons." This is right. Nor ought a debtor, in failing or insolvent circumstances, be permitted by deed, mortgage or assignment, so to dispose of his property as to reserve a portion for himself or to postpone his creditors. *Gazzam* v. *Doyatz*, 4 Ala. (N. S.), 382; 6 Id., 184; 5 Id., 297; *Bodley* v. *Goodrich*, 7 How. U. S. R., 276.

Now do the reservations in this mortgage injuriously affect, or can they be made the means of defrauding other creditors, either by *warding* them off, or by enabling the

mortgagor to secure the enjoyment of the property for himself?

Under our statute we think not. Let us test it. Suppose a creditor of Dayton is not willing to wait without security, or is unwilling to allow Dayton to remain in possession of the goods under the Cory mortgage. He can, as the plaintiff in this case actually did, at once commence his suit, and attach. If the mortgagee is in possession or has control, or has the right to possession or control of the goods, he can garnish him. If not, he can levy on the goods at once, if he deems the mortgage fraudulent. If he admits its validity he can levy on the goods, certainly after a tender, when this is requisite. *Rindskoff* v. *Lyman*, 16 Iowa, 260; *Campbell* v. *Leonard*, 11 Iowa, 489.

Now in many States the mortgagee could at once replevy, and, if he chose, immediately place the goods back into the possession of the mortgagor, and allow him, under the instrument, to go on in business as before; and where this would be the case, the courts would not sanction or uphold instruments or transactions which could so readily be made a cover for fraud and injury. And this view explains the Ohio decisions (*Collins* v. *Myers*, 16 Ohio, 547; *Freeman* v. *Ransom*, 5 Id., 1), and shows their inapplicability under our statute. But in this State the creditor, after levying by garnishment or otherwise, as above suggested, may, under section 3216, at any time, in term or in vacation, apply for and obtain a receiver to take possession of the property, and manage and control and sell it under the direction of the court. After this the mortgagee cannot replevy from the receiver, and the court may require him to present his claim, may allow the attaching creditor to contest it, will ascertain the amount due the respective parties, and apply, as they are found entitled, the funds in the hands of the receiver.

But it may be said, this is all very well where the creditor can attach and get his receiver.

But suppose he has no grounds for an attachment, how is he then to get a lien on the goods and a receiver? How prevent their misappropriation under the mortgage upon them? We answer, that if he has no grounds for an attachment with a mortgage on the property, he would have none if there were no mortgage, and consequently the mortgage does not injure him. So he is no worse off than if there were no mortgage.

If the mortgage is fraudulent, this alone is ground for an attachment. Nor do we see that the mortgage, in the sense prohibited by the law, reserves an interest in or secures a benefit to the mortgagor, at the expense of his other creditors. If he had agreed to apply *all* of the proceeds to the payment of Cory's debt, or if Cory had taken an instrument letting him into the immediate possession, with a right to receive all the proceeds, the other creditors would have been in a worse condition than they were by the instrument as it was, and yet this would, under the decisions of this court, have been valid. *Torbert* v. *Hayden, Adler* v. *Clafflin, supra.*

If he will not apply the 67 per cent which he retains, towards the payment of his other debts, or if the other creditors fear collusion or a dissipation of the property, or are dissatisfied with the arrangement, *it does not bind them* and they can at once proceed in the way above pointed out and compel the *whole* property to be appropriated to the payment of debts, and thus prevent any portion of it from being used by or going to the benefit of the debtor.

The District Court held that the effect of these stipulations in the mortgage was to make it fraudulent on its face, that is, as we understand the ruling, fraudulent in law and insusceptible of explanation, and incapable of conferring

any rights upon the mortgagee, even though it should be shown that he had a *bona fide* debt to the full amount secured; that he had none but honest motives in taking the security, and that he had pursued no course and done no acts by which the other creditors had been in fact injured, or of which they could reasonably complain.

With this view of the learned judge of the District Court we cannot concur.

The most that could be claimed by the defendants would be that the special provision, enabling the mortgagor to sell the goods would be evidence of fraud in fact, the value and strength of which would depend upon the other circumstances of the case.

If the value of the goods largely exceeded the amount of the debt, permission to sell for a limited time in the usual retail way, especially if the stipulated proceeds were strictly applied towards the reduction of the debt, would of itself be no very satisfactory evidence that the mortgage was fraudulent, that is, that it was taken to delay and keep off other creditors, and for the benefit of the mortgagor.

But if the debt exceeded the value of the goods, if the sales were made and the proceeds not applied, and the property was depreciating or being gradually dissipated or appropriated to the mortgagor's use, this would be quite satisfactory evidence, certainly unless rebutted and explained, that the mortgage was intended, not as a security to the mortgagee, but as a shield to the mortgagor, and therefore fraudulent.

These supposed cases are put as examples merely as to the effect, as evidence of fraud of the acts of the parties, under stipulations like those contained in the mortgage. See, on this point, *Torbert* v. *Hayden*, 11 Iowa, illustrations on pp. 440, 441, 442; and *Wilhelmi* v. *Leonard*, 13 Id., 330, 341.

The New York cases cited by appellee's counsel (*Griswold* v. *Sheldon & Payne*, 4 Comst., 581.; *Edgehill* v. *Hart*, 9 N. Y. (5 Seld.), 213, where DENIO, J., approves *Smith* v. *Acker*, 23 Wend., 658) are controllingly influenced by, if not wholly based upon, statute provisions *radically different* from ours, statutes which, as these cases show, make retention of possession, *prima facie*, and if not rebutted by the mortgagee, *conclusive* evidence of fraud.

The course of decision in New York upon this subject has little to recommend it. 2 Kent Com., 529, and note.

If we should undertake to follow these decisions we should have very uncertain guides, and be pursuing a labyrinth without a clue. Our statute, as we regard it, has closed the doors upon much of the controversy upon this subject, which has so agitated the courts of New York and other States.

The New York decisions are not applicable under our statute.

What the court decide in the present cause is, that the mortgage was not conclusively fraudulent on its face, or fraudulent *per se as a matter of law*; and that whether fraudulent in *fact* or not, should have been decided upon all the evidence, including, of course, the terms of the instrument itself.

Reversed.