BRAINARD v. VAN KURAN *et al*

SAME v. SMITH & VAN KURAN.

| 22 | 261 |
| 89 | 624 |
| 22 | 261 |
| 143 | 6 |

1. **Fraudulent conveyance:** REMEDY OF CREDITOR. To give the court jurisdiction and entitle a judgment creditor, by a proceeding in equity, to set aside a conveyance of real estate alleged to be fraudulent and which stands in the way of an execution issued upon a judgment which is a lien upon such real estate, it is not necessary that the creditor should exhaust his legal remedies or have an execution returned *nulla bona*.

2. **Homestead:** LIABILITY TO FOREIGN DEBTS. The homestead is liable to debts contracted in another State before its acquisition, and is subject to sale therefor, after the exhaustion of the other property of the debtor liable to execution. *Laing* v. *Cunningham*, 17 Iowa, 510.

3. **Fraudulent conveyance:** EVIDENCE EXAMINED. Some of the evidence by which it was established that real estate taken in the name of the wife was, in fact and law, purchased with the means of the husband, and held in secret trust by the wife in fraud of his creditors, reviewed by WRIGHT, J.

4. **New Trial:** FINDING BY THE COURT. Every presumption is to be indulged in favor of the finding of the court below on the testimony, and such finding will not be disturbed unless it clearly appears that it is not sustained by the evidence.

5. **Attachment:** GARNISHMENT OF FRAUDULENT MORTGAGEE. A creditor of a fraudulent mortgagor may, instead of proceeding in equity to set aside the mortgage or levying upon the property and claiming the right to sell it, reach the property included in such mortgage, by garnishing the mortgagee.

6. **Fraudulent mortgage:** BADGES OF FRAUD. A portion of the evidence which was held to justify the court below in concluding that the mortgage in question was fraudulent and void as against the creditors of the mortgagor, stated and discussed by WRIGHT, J.

## *Appeal from Clinton District Court.*

### MONDAY, JUNE 10.

ON the 9th day of September, 1865, the plaintiff recovered judgment against the defendant, Isaac Van Kuran, in the Clinton District Court, for the sum of $2,633.08 and costs, and, on the 23d, he caused execution to issue thereon.

It was levied, shortly thereafter, on the interest of Isaac Van Kuran in certain real and personal property in the town of Clinton; but all the real estate was claimed by the co-defendant, Cynthia Van Kuran, wife of Isaac; and nearly all the personal property (consisting principally of the machinery and stock of the Clinton car factory) was claimed by Milo Smith and Andrew S. Van Kuran, son of Isaac Van Kuran, by virtue of a chattel mortgage, executed to them by Isaac Van Kuran on the 19th of September, 1865. The only other articles of personal

property which could be found were a horse and buggy, since sold by the sheriff for $125. On the 16th of October, 1865, the plaintiff filed his petition in equity against Isaac Van Kuran, Cynthia Van Kuran *et al.*, to subject such real estate to the payment of the judgment against Isaac Van Kuran, on the ground that the property was held in secret trust by Cynthia Van Kuran, for her husband, Isaac.

Milo Smith and Andrew S. Van Kuran were garnished, and upon their answer, that they held no property belonging to Isaac Van Kuran, plaintiff joined issue, alleging that the mortgage under which the garnishees claimed to hold was fraudulent, and also, that it amounted to a general assignment *with preferences.* By written agreement, both cases were tried in the District Court together, by his honor, Judge RICHMAN, of the seventh judicial district; and it was further stipulated that the testimony taken in each case should be used so far as relevant in both cases; but separate judgments were to be rendered, one case being in equity, triable by the first method, and the other (garnishment case) being at law. The same stipulations being in force in this court.

Judgment and decree on both cases were entered below, after full hearing, in favor of plaintiff; and defendants appeal.

*Tyrell & Baily* for the appellants.

*Cook & Drury* for the appellee.

WRIGHT, J.—I. As to the equity cause. The object of the petition, after the levy and before the sale, was to discover the true and real nature of the debtor's interest in the property, it being alleged that it was held in the wife's name, in secret trust for the husband, and in fraud of the

1. FRAUD-
ULENT CON-
VEYANCE:
remedy of
creditor.

rights of his creditors. According to the testimony, there was no other visible property from which the debt could be made, for, as the debtor himself states, "nine-tenths, or ninety-nine one-hundredths," was conveyed by the mortgage. In such a case it is not necessary, to give the court jurisdiction, and to entitle plaintiff to the relief asked, that he should have first had a return of *nulla bona*. The case falls within the rule in *Loving* v. *Pairo* (10 Iowa, 282). Plaintiff is not seeking to reach equitable assets, upon which his judgment is not a lien. But after levy and before sale, he asks to have set aside a conveyance of the property levied upon, which he alleges is fraudulent and void. To do this it is not necessary to exhaust his legal remedies in his effort to obtain satisfaction of his judgment. And see also *Postlewait* v. *Howes*, 3 Id., 365; *Harrison* v. *Kramer*, Id., 543; *Savery* v. *Browning*, 18 Id., 246; *Beck* v. *Burdett*, 1 Page, 305.

Plaintiff's debt was contracted in another State, long before the homestead (a part of the property in controversy) was acquired; and as the decree reserved it from sale until the other property was exhausted, there was no error in adjudging it to be ultimately liable. *Laing* v. *Cunningham*, 17 Iowa, 510.

2. HOME-STEAD: liability to foreign debts.

The only other question is, whether, upon the facts, plaintiff was entitled to the relief asked. Defendants claim that the property belonged to the wife, because purchased by her and with her means. We think the testimony, so far from showing this, establishes, beyond any fair room for doubt, that it was purchased in law and in fact with the husband's means, and taken in the wife's name to hinder and delay creditors. And this, too, long after plaintiff's debt was contracted. The pretense that the wife had means, arising from her father's estate in Massachusetts, which

3. FRAUDU-LENT CON-VEYANCE: evidence examined.

she placed in her husband's hands to be invested in property in the West, and that it was accordingly invested in this property, is entirely unsupported by the proof. She doubtless did realize some means from the estate, but she, years and years ago, surrendered it to her husband, and he used and invested it from time to time at his own pleasure, without any expectation on the part of either, of ultimate accountability to her. This is manifest from the following, among other considerations: He had this money prior to 1860, in Massachusetts, where the rule of the common law obtained, and she could, as against creditors, certainly have no claim against her husband therefor.

In 1861 he was discharged under the insolvent laws of Massachusetts; she resided there; was not mentioned among his creditors, and is thereby either barred absolutely from now setting up this claim, or, if not, the fact that she was not named as a creditor or failed to assert the same, is a most potent circumstance against its validity at this time.

Then, again, we are satisfied that there was no expectation or understanding that this money was to be returned; but she voluntarily permitted him to use it as his own, and in his own business, without notice of her rights. And, finally, her money did not pay for the property. That is to say, it was bought for the most part on credit, for which the husband is jointly bound with the wife.

So that, upon all the facts, we cannot resist the conviction that this was the husband's property. If not, names, forms, formal legal titles, must possess an unwarrantable sanctity, and creditors are without rights in a court of conscience. *Thompson* v. *Gray*, 21 Iowa; *Wolcot* v. *Rickey*, present term; *Hook* v. *Mowre*, 17 Id., 195; *Wilson* v. *Horr*, 15 Id., 489; *Vandall* v. *Vandall*, 13 Id., 247; *Laing* v. *Cunningham*, *supra*.

II. As to the garnishee proceeding against the defendants Smith and the son Andrew Van Kuran. And this we remark was a law action, tried by the court, appellants now insisting that the finding was not justified by the evidence. Issue was taken upon the answer of the garnishee as contemplated by section 3208 of the Revision.

· The issue thus taken was tried upon full testimony, and found for plaintiff. No facts were found, but we are asked to review the testimony, and for the reason that it does not sustain the judgment or finding, order a new trial.

In this condition of the record, every presumption is to be indulged in favor of the finding below, and it must 4. NEW TRIAL: clearly appear that the verdict or finding of finding by the court. the court is not sustained by the testimony. As to this, there is no room for controversy. *Barker* v. *Brown*, 15 Iowa, 70 ; *Sheppard* v. *Downing*, 14 Id., 597 ; *Lodge* v. *Reznor*, 13 Id., 600 ; *Shepherd* v. *Brenton*, 15 Id., 84; *Bellamy* v. *Doud*, 11 Id., 285 ; *Pearson* v. *Minturn*, 18 Id., 36 ; *Robinson* v. *Saunders*, 14 Id., 539.

In this attitude, the case presents but little difficulty. Plaintiff, instead of proceeding in equity to set aside the 5. ATTACH- mortgage, or levying upon the property and MENT: gar- nishment of claiming the right to sell it, because the mort- fraudulent mortgagee. gage was void upon its face, had the mortgagees attached as garnishees, and thus sought to reach the property in their hands. And, in this, he but adopted the suggestion made in *Torbett* v. *Hayden* (11 Iowa, 435) ; followed in *Hughes* v. *Corey* (20 Id., 399).

In determining the question made, we are not limited to an examination of the mortgage alone ; for, whether it was fraudulent upon its face, or shown to be so *in fact*, by evidence *aliunde*, the judgment will not be disturbed. As to the law governing, there is no controversy. See the case last above cited, and *Davenport* v. *Cummings*, 15

Id., 219; *Fifield* v. *Gaston*, 12 Id., 218; *Campbell* v. *Leonard*, 11 Id., 489; *Kuhn* v. *Graves*, 9 Id., 303; *Wilhelmi* v. *Leonard*, 13 Id., 330.

Adhering to the rule laid down in these cases, we mention briefly some facts which justified the court below in **6. FRAUDULENT** concluding that the mortgage was void, as **MORTGAGE: badges of** against plaintiff and the other creditors. In **fraud.** the first place Isaac Van Kuran, the father of Andrew, was very badly in debt, and this mortgage covered almost if not the entire property then held by him, in his own name. It was made immediately after plaintiff obtained his judgment, which claim the debtor had been resisting for years. The mortgagor remained in possession, and managed and controlled the property as before, without any arrangement as to compensation, and with no express liability to render to the mortgagees an account of his disbursements and expenditures. The mortgage, upon its face, is absolute to secure four promissory notes of $7,500 each, due in thirty, sixty, ninety, and one hundred and twenty days, which was duly recorded. And yet, at the same time, a separate agreement was entered into, not placed on record, reserving to the mortgagor rights and privileges inconsistent with the mortgage —looking to the application of the money arising from the running of the car works to the payment of certain creditors of said mortgagor named therein (not, however, including plaintiff) without their knowledge or consent, and not obligating the mortgagees to pay the same, except as the funds were realized from the sale of the property mortgaged. After all this, one of the mortgagees, the book-keeper—in which capacity he acted before as well as after the making of the mortgage—wrote letters to some of these same creditors, treating the debts as still owing by the elder Van Kuran; speaking of the property as his and managed by him, and making no disclosure of

his or his co-defendant's lien in connection with the property.

From all these facts, we think a jury (or the court as a jury) could very justly conclude that there was an intention to hinder and delay creditors. Certain it is, the finding to this effect is not so clearly against the weight of testimony as to justify our interference, and we only add, in conclusion, that, after defendants were garnisheed, it was their duty to either retain the property in their possession or the proceeds of the sale, and if, after that time, they parted with the same in payment of the mortgagor's debts, they acted at their peril, and they cannot now escape liability upon the ground that they had thus applied all moneys realized from such sales.

Affirmed.