AT

## DES MOINES, JUNE TERM, A. D. 1884.

IN THE THIRTY-EIGHTH YEAR OF THE STATE.

---

PRESENT:

HON. JAMES H. ROTHROCK, CHIEF JUSTICE,
" JOSEPH M. BECK,
" AUSTIN ADAMS,
" WILLIAM H. SEEVERS, ⎱ JUDGES.
" JOSEPH R. REED,

---

### SPERRY ET AL v. ETHERIDGE.

| 63 | 543 |
| 94 | 151 |

1. **Chattel Mortgage:** AGREEMENT FOR POSSESSION AND SALE OF PROPERTY BY INSOLVENT MORTGAGOR: NOT FRAUDULENT IN LAW. Under the statutes of this state, where there is no actual intent to defraud, a chattel mortgage is not rendered fraudulent *per se* by the agreement of the parties that the mortgagor may retain possession of the property, and dispose of it in the ordinary course of trade, and appropriate a part of the proceeds to the support of himself and family, even though he be insolvent at the time of making the mortgage. *Hughes v. Cory*, 20 Iowa, 399, and *Clark v. Hyman*, 55 Id., 14, followed.

2. ——: BY INSOLVENT MORTGAGOR: VALIDITY OF. Under the statutes of this state, no disabilities are imposed upon insolvents with reference to the disposition of their property; and they may, by sales or mortgages,

give preference to some of their creditors, and, if done in good faith, such sales and mortgages will be upheld by the law.

3. ———: AGREEMENT FOR POSSESSION AND SALE OF PROPERTY BY IN-SOLVENT MORTGAGOR: EVIDENCE OF FRAUD: QUESTION FOR JURY. While a chattel mortgage is not rendered fraudulent by the facts that the mortgagor was insolvent when the mortgage was made, and that there was an agreement that he should retain possession of the goods, and sell them, and appropriate to his own use a part of the proceeds, yet, where there was evidence tending to prove such facts, the case should have been submitted to the jury, whose province it is in such cases, and not that of the court, to determine from all the circumstances whether or not there was fraud in fact. *Torbert v. Hayden*, 11 Iowa, 435, followed.

4. **Practice**: TAKING CASE FROM JURY: WHEN JUSTIFIABLE. The court is justified in taking a case from the jury only when there is an entire absence of evidence tending to establish the claim or defense set up in the pleadings.

*Appeal from Polk Circuit Court.*

TUESDAY, JUNE 3.

PLAINTIFFS allege in their petition that in the month of August, 1882, they were the owners of two chattel mortgages on a stock of goods and merchandise, given by one George W. Hamilton, to secure an indebtedness of about $450, which he was owing them, and that defendant seized and converted said mortgaged property to his own use; and they ask judgment for the value of their interest therein. The defendant answers that he seized the property by virtue of a writ of attachment, issued by the circuit court of the United States for the district of Iowa, and placed in his hands, as deputy United States marshal, to be served; that the property at the time of the seizure was in Hamilton's possession, and was subject to seizure; that he seized but a portion of the stock covered by the mortgage, and left in the store where found more than enough goods to satisfy plaintiffs' claim, which, by the exercise of proper diligence, they might have applied in satisfaction of said debt; that, prior to the execution of the mortgages to plaintiffs, Hamilton had executed a mortgage on the same property to Perry, Cook & Towner, to secure a debt of $631.32,

which he was owing them; and that, on the next day after the execution of the second mortgage to plaintiff, he executed to A. P. Wright, trustee, a mortgage on the same property covered by the mortgages to Perry, Cook & Town and to plaintiffs, to secure certain other creditors named therein; that each of these mortgages was executed by Hamilton in contemplation of insolvency, and that he was in fact insolvent at the time, and that the execution of all of said instruments constituted but one transaction, and amounts to a general assignment for the benefit of creditors, and that such assignment, and the instruments constituting it, are void, because a preference is thereby given to certain creditors. He also alleges that said mortgages were executed by Hamilton with intent to hinder, delay and defraud creditors. There was a verdict and judgment for plaintiffs, and defendant appeals.

*Bryan & Bryan*, for appellant.

*H. S. Wilcox*, for appellee.

REED, J.—Hamilton, the mortgagor, was a merchant doing business at Knoxville, Marion county. One of the mortgages under which plaintiffs claim was executed on the fourth, and the other on the fifth, of July, 1882. They were given to secure different debts, and each covers all the goods and merchandise then in the store, or which should thereafter be added to the stock. The one first executed also covers all notes and book accounts then in the store, and the other covers all notes, book accounts and other evidences of indebtedness which may thereafter accrue in favor of Hamilton, arising out of the business; and they each provide that, in case of default made in the payment of the debt secured, or in case the mortgagor shall attempt to dispose of or remove the property, or any portion of it, from the county, or whenever the mortgagees shall elect so to do, they may take possession of the mortgaged property.

There was evidence tending to prove that when the mort-

gages were given there was a parol agreement between plaintiffs and Hamilton, to the effect that Hamilton should remain in possession of the property, and should continue to carry on the business of the store, selling the goods in the usual course of trade, and applying the proceeds to the payment of his debts, and to the purchase of other goods to replenish the stock, and to the payment of the running expenses of the store, and for the support of himself and family. The evidence also tends to prove that Hamilton was insolvent at the time the mortgages were given.

Defendant asked the court to instruct the jury as follows:

1. That, if the mortgagor was left in possession of the property, with the privilege of continuing the business of buying and selling as before the mortgages were made, and there was no provision for the application of the entire proceeds of the sale of the property to the payment of the debts secured by the mortgages, but the mortgagor had the privilege of appropriating a portion of such proceeds to his own use, the mortgages were fraudulent in law, and void, as to the creditors of Hamilton.

2. That, if an arrangement was made between the parties to the mortgages, that the mortgagor was to have full possession and control of the property, with the privilege of applying any portion of it to any other use than the discharge of the debts secured by the mortgages, they were fraudulent in law, and void as to creditors.

3. That, if Hamilton was insolvent when he gave the mortgages, and they covered all the property which he had invested in the business, and the debts secured by the mortgages were small compared with the value of the property covered by them, and there was an agreement between him and plaintiff that he should remain in possession and carry on the business for an indefinite period of time, these were proper circumstances to be considered by the jury in determining whether the mortgages were given with intent to defraud the other creditors of Hamilton.

The court refused to give these instructions, but directed the jury to find for plaintiffs. The ruling of the circuit court was, in effect, *First*, that the facts which the evidence tended to prove, if proved, would not render the mortgages fraudulent in law; and, *Second*, that said facts would not have any tendency to prove that the mortgages were given and received with any actual intent to defraud the other creditors of Hamilton.

I.    The first question, then, which we are required to determine is, whether the facts that the mortgagor was insolvent

1. CHATTEL mortgage: agreement for possession and sale of mortgaged property by insolvent mortgagor: not fraudulent in law.

when the mortgages were given, and that there was an agreement that he might remain in possession of the mortgaged property, and sell it in the ordinary course of trade, and apply the proceeds to his own use, render the mortgages fraudulent in law.

It is held in *Hughes v. Cory*, 20 Iowa, 399, and in *Clark v. Hyman*, 55 Id., 14, that, under the statutes of this state, where there is no actual intent to defraud, a chattel mortgage is not rendered fraudulent *per se* by the agreement of the parties that the mortgagor may retain possession of the property, and dispose of it in the ordinary course of trade, without any agreement that the proceeds shall be applied to the payment of the debt secured by the mortgage. Appellant does not deny that this is now the settled rule in this state, and we are not asked to reconsider it; but the claim is that this case is distinguished from the cases cited, and taken out of the rule, by the facts of the agreement that the mortgagor might appropriate a part of the proceeds of the mortgaged property for his own support and that of his family, and of his insolvency at the time.

But we are not able to see that the agreement with reference to the support of the mortgagor and his family out of the proceeds of the property at all distinguishes the case from either *Hughes v. Cory* or *Clark v. Hyman*. In the former case, the agreement was that the mortgagor should sell the

property in the usual course of business, and apply thirty-three per cent of the proceeds on the mortgaged debt, and there was no agreement at all as to the application which should be made of the remainder; while, in the latter case, the mortgagor had the right to dispose of the property in the same manner, but there was no agreement as to the disposition which should be made of the proceeds. In the one case, then, the mortgagor might apply 67 per cent, and in the other the whole, of the proceeds to whatever personal use he might choose, and the right to appropriate a portion for his own or his family's support was as certainly reserved in these cases as though it had been stated in express terms in the contracts.

Neither do we think that the character of the transaction in law is affected by the fact of the insolvency of the mortgagor at the time the mortgages were given. There is no statute in this state imposing any special duties or disabilities on insolvents with reference to the disposition of their property. They may make assignments of all of their property for the benefit of all of their creditors, or, if they so elect, they may, by sales or mortgages of their property, give preferences to a portion of their creditors, and any disposition of their property, which is made honestly and in good faith, will be upheld by the law. The fact of the insolvency of the vendor is often a material circumstance in determining whether the sale was made with an actual intent to defraud; but, in the absence of such intent, the law will uphold the sale. We think, then, that the circuit court correctly held that the mortgages were not fraudulent in law.

*2. ——: by insolvent mortgagor: validity of.*

II. We think, however, that the circuit court erred in refusing to submit to the jury the question whether the mortgages were fraudulent in fact. It cannot be said that there was no evidence tending to prove that they were executed with intent to defraud or delay the other creditors of Hamilton. It is said in *Torbert v. Hayden*, 11 Iowa, 435: "Whether a chattel mortgage, when the mortgagor holds possession and

*3. ——: agreement for possession and sale of property by mortgagor: evidence of fraud: question for jury.*

deals with the mortgaged property as his own, is fraudulent or not, is a question of fact for the jury, and not one of law for the court." And in *Hughes v. Cory, supra*, it is said that, while the mere retention by the mortgagor of the property, where the instrument is recorded, is no longer either *per se* fraudulent or a badge of fraud, it may be a circumstance, with others, to prove fraud in fact.

The evidence given on the trial tended to establish a number of circumstances, in addition to the fact that the mortgagor retained possession, such as the insolvency of the mortgagor, and the parol agreement that he might sell the property and appropriate a portion of the proceeds to his individual use, which defendant had the right to have considered in determining the question whether the mortgage was given with an actual fraudulent intent. It is true that, in *Clark v. Hyman, supra*, it was held by this court, on a similar state of facts, that the allegation of fraud was not established; but that was an equitable action triable *de novo* in this court. We were, therefore, required to determine the question of fact as an original question. But in this case the question was to be passed upon by the jury; and, as there was evidence proper to be considered in determining it, it was the right of the parties to have it submitted to them to be determined on the evidence. The court is justified in taking a case from the jury only when there is an entire absence of evidence tending to establish the claim or defense which is set up in the pleadings.

4. PRACTICE: taking case from jury; when justifiable

Other questions are discussed by counsel, but, as they may not arise on a retrial of the case, we deem it unnecessary to determine them. For the error in refusing to submit the case to the jury, the judgment of the circuit court is reversed, and the cause remanded for a new trial.

REVERSED.