CASE 54—PETITION EQUITY—SEPTEMBER 28.

# McGill's creditors vs. McGill's administrator.

APPEAL FROM KENTON CIRCUIT COURT.

M. and P. were in partnership as attorneys at law. The firm received and receipted for claims for collection by suit or otherwise. Suits were instituted and judgments recovered upon them in the lifetime of M., and after his death the money was collected by P., but was not paid to the claimants. P. subsequently died insolvent. There were no assets of the firm of M. & P. to be applied to the payment of the claims. *Held*—That the separate estate of M. is liable for their payment.

2. See this case for a discussion of the principles of law applicable to partnerships between attorneys at law, and the responsibilities growing out of them, as well as to the effect of the dissolution of the firm by the death of one of the partners.

H. Myers, for appellants, cited 6 *Barr*, 364; 8 *Wend.*, 666; 8 *Cow.*, 258; 4 *McCord*, 259; *Story's Partnership, secs.* 344, 325, 326, 327, 328, 347; *Gow's Partnership, p.* 331; 6 *Cow.*, 442; 1 *Taunt.*, 104; 20 *Barb.*, 477; 23 *Missouri*, 76; 21 *Ib.*, 215; 11 *Ves.*, 5; *Addison on Contracts, p.* 359; 1 *Parsons on Contracts, p.*

111; *Story on Contracts, second ed., secs.* 275, 276; 12 *Smedes &amp; Marshall,* 669; 2 *John., Ch. Rep.,* 509; 4 *Dana,* 148; 3 *Kent,* 63; 1 *Meeson &amp; Welsby,* 423; *Broom's Legal Maxims,* [704.]

MENZIES & PRYOR, for appellee, cited 2 *Bibb,* 103; 1 *Bibb,* 547; 4 *Litt.,* 412; 5 *B. Mon.,* 501; 1 *Williams on Ex.,* 678; 2 *Ib.,* 1467; *Chitty on Contracts,* 98; 1 *Chitty's Pleadings,* 58; 2 *Kent,* 839, 825, 841, *eighth ed.*; 8 *Wheaton,* 201; 3 *Watts &amp; Serg.,* 79; *Story on Agency, secs.* 13, 14, 23; 6 *Barr,* 360; 3 *Mon.,* 71; 2 *J. J. Mar.,* 184.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

The administrator of John D. McGill, deceased, brought this action for the settlement of the decedent's estate. Two claims against the estate, one in favor of the State Bank of Ohio, and the other in favor of B. Whitney, were presented, and rejected by the court. From the decision of the circuit court rejecting these claims this appeal is prosecuted.

McGill was an attorney at law, and was in partnership with another attorney at law by the name of Phelps. The firm executed a receipt to B. Whitney, of which the following is a copy:

"1855, November 3d.—Received of Burnett Whitney a note drawn, &c., (here follows a statement of the amount, date, &c., of the note,) for collection by suit or otherwise. Also received ten dollars, to be applied towards the costs of the suit if instituted.

"McGILL & PHELPS, *Attorneys.*"

They also executed a receipt for a debt due to the State Bank of Ohio in the following terms:

"Covington, July 11th, 1855.—Received of Aaron F. Perry a bill of exchange (here describing the bill) for suit or collection for the benefit of the State Bank of Ohio."

Suits were instituted and judgments recovered on both of said demands in the lifetime of McGill. The money was collected by Phelps after the death of McGill, but was not paid to the claimants. Phelps subsequently died insolvent, and there being no partnership assets to be applied to the payment of these claims, the question arises, whether the separate estate of McGill is liable for their payment.

Attorneys at law may enter into partnership for the prosecution of professional business, and it may be laid down as a general rule that, as in other cases of partnership, each partner is liable for the acts and engagements of any other member of the firm in all matters occurring during the continuance of the partnership, within the scope of its appropriate business. (*Warner vs. Griswold*, 8 *Wendell*, 666; *Livingston vs Cox*, 6 *Barr*, (*Penn.*,) 364.)

In ordinary partnerships, each member of the firm continues bound for all existing liabilities, and for the performance of all partnership undertakings begun but not completed, prior to a dissolution of the firm; and if the dissolution be by death, the estate of the deceased partner is still liable for their performance. (*Story's Partnership, section* 344; *Gow on Partnership*, 331.)

Although, however, there is in general no distinction between a dissolution of a partnership by the death of one of the members and a dissolution produced in any other manner, yet such a distinction does to some extent exist in professional partnerships between attorneys, and arises out of the peculiar nature of their engagements.

A contract with a lawyer, the *performance of which requires* the exercise of professional skill, is *personal* in its character. The service of the person employed is indispensable in the performance of the contract. Lawyers are employed in professional business because the client has confidence in their integrity and in their qualifications. If a firm be employed, the client has a right to the services of all of its members. (19 *Vesey's Rep.*, 273.) If one of them die, the engagement is at an end, unless by its terms it is still to subsist, and the business is to be attended to by the survivors. For the services rendered during the continuance of the engagement, the firm is entitled to compensation; but by the death of one of the persons employed the engagement is determined if its completion requires any exercise of professional skill.

The cases cited are not at all in conflict with the foregoing position. In the case of *Pool vs. Gist*, (4 *McCord*, 259,) the debt was placed in the hands of a firm for collection, but

before the money was collected the attorneys dissolved their partnership. One of them afterwards collected the money, and having failed to pay it to the client, it was decided that they were both responsible for it. Now in that case both the members of the firm were living at the time the money was collected. They could not exonerate themselves from a joint liability on a joint undertaking by their own act without the consent of their client. A contract, although personal in its character, remains obligatory during the life of the contracting parties. The law requires it to be performed unless its performance be prevented by death, in which event the law regards.it as at an end, because the parties did not contemplate that it should be performed by a substitute.

In the case of *Wilkinson vs. Griswold,* (12 *Smedes and Marshall,* 669,) the retired partner was, upon the same principle, held responsible for the money collected. He was not permitted, by withdrawing from the firm voluntarily, to discharge himself from liability for its engagements entered into during the time he was connected with it. The decisions in these two cases would, therefore, be correct, whether the engagements of the firm are to be regarded as personal or not.

In *Williams on Executors,* (*vol.* 2, *p.* 1467,) it is said, " no liability attaches upon the executor or administrator where the contract is *personal* to the testator oɪ intestate, unless a breach was incurred in the lifetime of the deceased."

In 1 volume Parsons on Contracts, (*p.* 111,) the author says: " Where an executory contract is strictly of a personal nature, as, for example, with an author for a specified work, the death of the writer before the book is completed absolutely determines the contract, unless what remains to be done, as, for example, the preparing an index, or table of contents, can certainly be done as well and to the same purpose by another."

" The personal representative is entitled to the benefit of all such of the executory contracts of the deceased as he can fairly and efficiently fulfill." (*Addison on Contracts, p.* 359.) [1053, 2*d Amer., from* 4*th Eng. ed.*] In *Story on Contracts* (*p.* 275) the same principle is substantially stated.

Whenever, therefore, the personal representative can perform the contract, he is bound to do it, and he may also enforce

it, and secure the benefits resulting from it to the estate with the management of which he is intrusted.

It appears in this case that suits had been brought on the debts, and judgments thereon recovered, before the death of McGill. The question then arises, whether the personal attention and services of the deceased partner were indispensable to the completion of the undertaking, or whether, what remained to be done could not be as efficiently performed by the surviving partner as it would have been by the firm; for if it could be, then it was his duty to have collected and paid over the money, and the estate of the decedent is liable for its non-performance.

It was said by this court in the case of *Shultz & Co. vs. Johnson's administrator*, (5 B. *Mon.*, 501,) that the question, whether a contract is *personal*, " must turn at last upon the *intention* of the parties. If the intention be that the contractor alone, in person, is to perform the contract, and that it is not to be performed by any other person, such a contract, it seems to us, would be personal in the sense in which we are considering it."

The undertaking in this case was to collect money. It was to be collected by suit or otherwise. That a suit was contemplated as necessary for its collection may be inferred from the fact that the debts were placed in the hands of attorneys at law to be collected. The contract between the parties, however, was not merely that suits should be brought and judgments recovered on the debts, but that the money should be collected. The collection of the money was the primary object which the creditors had in view, and was also the substance of the undertaking on the part of the attorneys. The fulfillment of their contract required them to collect the money if practicable, and their undertaking was not fully complied with until that was accomplished.

The judgments having been recovered, the collection of the money and its payment to the creditors was all that remained to be done at the time of the death of McGill. For its performance no professional skill was necessary. The firm then occupied the attitude of other partnerships, each member

McGill's creditors vs. McGill's administrator.

continuing bound for all existing liabilities, and for the due per-
formance of all partnership undertakings not completed at the
time of the dissolution of the firm by the death of one of its'
members.

.Either member of the firm, prior to its dissolution, had a right
to collect and receipt for the money. The survivor had the
same right after the death of his partner, unless his authority
to do so had been revoked by the plaintiff in the judgment.
Having the right to collect the money as surviving member of
the firm, all the members of the firm must be considered as
bound for its payment to the claimants when collected.

If the character of that part of the undertaking which re-
mained to be performed after the judgments were recovered is
to be determined by the *intention* of the parties, then we think
it is very clear that it cannot be regarded as *personal* to the
deceased partner. If a claim were put into the hands of a
firm merely for collection, without suit, the owner of the claim
would, in the event of the death of a member of the firm,
expect the surviving partner to attend to the business of the
firm, and collect the debt. Such would manifestly be the inten-
tion and understanding of the parties; and in such a case there
could be no doubt of the liability of the estate of the deceased
partner for a breach of the undertaking by the survivor, accord-
ing to the well established law on the subject of partnerships.

The mere collection of money is not professional business,
nor does its performance require the exercise of legal skill. If
attorneys at law, being members of a firm, undertake business
of this kind, the undertaking involves the same liabilities that
are incurred by ordinary partnerships, and each member of the
firm continues bound for the performance of all the partnership
undertakings begun but not completed prior to the dissolution;
and if the dissolution result from the death of one of the part-
ners, his estate still continues liable for their performance.

It is, however, contended that in such a case the attorneys at
law are mere agents, and the authority being joint, ceases and
determines upon the death of either, and cannot be exercised
by the survivor; and that, therefore, the estate of the deceased
partner is not liable for the unauthorized acts of the survivor.

It is a general rule of law, that where an authority is given to two or more persons to do an act, the power is understood to be joint, and not several, and all of them must concur in doing the act to make it valid and binding on the principal. But this rule does not apply to cases where, from the very nature of the act to be performed, a several authority may be implied. The collection of money is an act that is usually performed by a single individual; and, therefore, the employment of a firm to collect a debt imports a consent by the creditor that the members shall trust one another, and that either of them may collect the money. On their part they are co-contractors, and as such are jointly accountable and responsible *in solido* for each other. It is analogous to the case of a consignment of goods to a firm for sale—each member of the firm is understood to possess the whole power over the goods for the purposes of the consignment. And the firm having by the consignment incurred an obligation to sell the goods and account for the proceeds, is not discharged from that obligation by a dissolution occasioned by the death of one of its members, but the efficacy and validity of the obligation will remain the same, and be binding on the partnership in the same manner as if no dissolution had occurred.

Here either member of the firm could collect the money and pay it over to the person entitled to it, the whole firm being responsible for the acts of each of its members. The firm, during its existence, had incurred an obligation to collect the money for which the judgments had been recovered. This obligation continued in force, notwithstanding the dissolution of the firm by the death of one of its members. The creditors trusted each member of the firm upon the joint responsibility of all its members. The observance of good faith, therefore, requires that the partnership should not only be liable for a breach of this engagement occurring prior to its dissolution, but also for a breach thereof occurring after the death of one of the partners.

We are therefore of the opinion that McGill's estate is liable for the money collected after his death by his partner Phelps, in fulfillment of the partnership engagements, and which he failed to pay over to the persons entitled thereto.

Wherefore, the judgment of the circuit court is reversed, and cause remanded for further proceedings in conformity with this opinion.