A. Peiser & Co. et al. v. A. B. Peticolas and J. E. Car-
PENTER.

1. SEQUESTRATION.—A sequestration does not create a lien; it is but
a judicial deposit.
2. REGISTRATION OF MORTGAGES.—The effect of the statute requiring
the registration of mortgages is not to make a recorded mortgage
*prima facie* valid which, prior to the statute, would have been held
fraudulent in law.
3. FRAUD IN LAW is defined to be such acts or contracts as, although
not originating in any actual evil design or contrivance to perpetrate
a positive fraud upon other persons, are yet, by their tendency to
deceive or mislead other persons, or to violate private or public con-
fidence, or to impair or injure the public interests, deemed equally
reprehensible with positive fraud, and therefore are prohibited by
law as within the same reason as acts done *malo animo*.
4. DUTY OF COURT IN FRAUDULENT INSTRUMENTS. — Where well-
defined legal fraud is shown upon the face of an instrument itself,
without resort to intrinsic testimony, it is the duty of the court to
construe and declare its legal effect.
5. FRAUDULENT MORTGAGE—MORTGAGE ON STOCK OF GOODS.—The
retention of possession of a stock of goods by a mortgagor, though
the instrument be recorded with power in him to sell the same in
the usual course of trade without applying the proceeds to the
mortgage debt, but to substitute other goods, is fraudulent in law,
without regard to the good faith of the transaction.
6. SAME.—Such mortgages, although recorded, are void, except as be-
tween parties, and will be so declared where the defect is manifest
on the face of the instrument or ascertained by verdict of a jury
upon testimony.

ERROR from Victoria. Tried below before the Hon. H
Clay Pleasants.

This suit was brought by A. B. Peticolas against J. E. Car-
penter in the District Court for Victoria county upon a prom-
issory note and mortgage upon a stock of goods.

The mortgaged goods were sequestered. Pending the suit
A. Peiser & Co. and Ralph Levy each obtained judgment
against Carpenter before a justice of the peace, had execu-
tions issued thereon, and levied on the same goods which
had been seized under the writ of sequestration sued out by

Peticolas. These levies were made by the same officer who levied the writ of sequestration. The goods, not having been replevied, had remained in the possession of the officer.

A. Peiser & Co. and Ralph Levy each intervened in the suit of Peticolas against Carpenter, and prayed that their debts be satisfied out of the proceeds of the goods, upon the ground that the mortgage given to Peticolas by Carpenter was invalid and void as to them, as creditors of Carpenter. A jury was waived and the cause submitted to the court.

It was adjudged that intervenors take nothing, and that Peticolas have judgment against Carpenter for his debt and foreclosing his mortgage upon the goods seized.

Ralph Levy having died since the trial of the cause, Samuel Levy, as the executor of his last will and testament, prosecuted the suit by writ of error, as did also A. Peiser & Co., one transcript containing the entire cases.

The facts concerning the mortgage, as shown, are as follow:

On the 23d of September, 1875, Carpenter was indebted to Peticolas, on the settlement of a partnership business, in the sum of $1,300, for which he executed his promissory note, due one day after date.

At the same time Carpenter executed to Peticolas an agreement, by which he sought to mortgage to him all of his goods, wares, and merchandise in trade, and all additions which he might make, by purchase or otherwise, to the stock which he had at the time of the execution of said instrument. There was no enumeration of the several articles, but the instrument contained a general statement of the kinds of articles of which the stock consisted.

At the time the instrument was executed Carpenter was carrying on a small mercantile business, which he continued until a few days before the entire stock which he had, was seized under a writ of sequestration, which was sued out by Peticolas and levied on the 9th of May, 1876.

There was no agreement that Carpenter would use the

proceeds of sales to pay off the debt due to Peticolas. Peticolas knew at the time the instrument was executed that Carpenter had no money with which to purchase goods, except such as he might obtain by sale of stock on hand, and he also knew that Carpenter was selling the mortgaged stock from the time the mortgage was made until the seizure.

Carpenter was not indebted to any one when the note and mortgage were executed. The mortgage upon the stock was the only security Carpenter could give on his note. It was expected by Peticolas that Carpenter would sell in the usual course of trade, and with the proceeds of sales so made replenish the stock. The debts on which the intervenors claimed, were incurred subsequent to the execution and the registration of the mortgage. The mortgage was recorded September 24, 1875.

The note was given in settlement of a business begun under a contract between Peticolas and Carpenter, of date December 29, 1874. Peticolas advanced to Carpenter the money to buy the first stock of goods and leased him a storehouse in Victoria. Carpenter, by the contract, was to manage the business and on a cash basis, Peticolas to receive quarterly the half of the net proceeds; the business to extend two years, when Peticolas was to receive the money advanced, Carpenter the balance.

September 23, 1875, this contract was annulled, and the note sued on executed for the indebtedness of the business to Peticolas. The mortgage was executed upon the stock of goods. The mortgage recited that "the note was for money by Peticolas advanced to buy my first stock of goods." In addition, and signed by Carpenter and wife and recorded with the mortgage, was the following: "The stock of merchandise now in the hands of my husband, J. E. Carpenter, and mentioned in the within mortgage, having been purchased by money advanced by A. B. Peticolas, and recognizing his right to have the purchase-money thereof returned to him out of the goods, I hereby forever renounce any right

in law to have any part of said goods in lieu of homestead or year's allowance to which I might become entitled in the event of J. E. Carpenter's death before the debt due A. B. Peticolas is paid; and I covenant never to claim any interest in J. E. Carpenter's stock in trade in lieu of homestead or year's allowance so as to defeat the collection of said debt due A. B. Peticolas."

Subsequent to the mortgage Carpenter carried on the business, had part of the goods still on hand, had goods bought with proceeds of sales of the mortgaged stock, and goods bought on credit in the store when seized under the writ of sequestration.

*Lackey & Stayton,* for plaintiffs in error.

I. A mortgage upon a stock of goods, the mortgagor remaining in possession thereof, with full authority to sell the same in the ordinary course of business, and which does not require the proceeds of sale to be used in discharge of the mortgage debt, is void. (Robinson *v.* Elliott, 22 Wallace, 513; Addington *v.* Etheridge, 12 Gratt., 436; Lang *v.* Lee, 3 Rand., 410; Divver *v.* McLaughlin, 2 Wend., 596; McLachlan *v.* Wright, 3 Wend., 348; Wood *v.* Lowry, 17 Wend., 492; Edgell *v.* Hart, 9 N. Y., 213; Gardner *v.* McEwen, 19 N. Y., 123; Russell *v.* Winne, 37 N. Y., 591; Putnam *v.* Osgood, 52 N. H., 148; Ranlett *v.* Blodgett, 17 N. H., 305; Collins *v.* Myers, 16 Ohio, 547; Freeman *v.* Rawson, 5 Ohio St., 1; Chophard *v.* Bayard, 5 Minn., 533; Horton *v.* Williams, 21 Minn., 187; Steinart *v.* Deuster, 23 Wis., 136; Bishop *v.* Williams, 18 Ill., 101; Barnet *v.* Fergus, 51 Ill., 352; Walter *v.* Wimer, 24 Mo., 63; Stanley *v.* Bunce, 27 Mo., 269; Billingsley *v.* Bunce, 28 Mo., 547; Lodge *v.* Samuels, 50 Mo., 204; Hower *v.* Geesaman, 17 S. & R., 251.)

II. A mortgage upon goods to be acquired after the date of the mortgage is void as to creditors, unless it be shown that such goods were bought with money obtained through the mortgage or by the proceeds of mortgaged property sold.

(Robinson v. Elliott, 22 Wall., 513; Moody v. Wright, 13 Metc., (Mass.,) 17; Edgell v. Hart, 9 N. Y., 213; Collins v. Myers, 16 Ohio, 547; National Bank v. Ebbert, 2 Southern Law Rev., (old series,) 175; Phelps v. Murray, Chancery Court Term, Nashville, Tenn., April, 1877; 4 Cent. Law Jour., 583; Levy v. Welsh, 2 Edw. Ch., 438; 2 Hill. on Mort., 337–342.)

III. The mortgage is void for the want of such description of the property to be acquired after the mortgage as would put creditors upon notice, or enable a creditor or the court to identify the property mortgaged. (Winslow v. Merchants' Ins. Co., 4 Metc., 306; Barnard v. Eaton, 2 Cush., 294; Otis v. Sill, 8 Barb., 102.)

IV. The claim of A. B. Peticolas to a prior lien upon the property seized must stand upon the validity of his mortgage, and the levy of the writ of sequestration gave no lien. (Fowler v. Stonum, 6 Tex., 72; Pitot v. Elmes, 1 Mart., 79; (1 Cond., 43;) Oddie v. Creditors, 6 Mart., 251; (9 Cond., 251;) Syndic v. Jewett, 6 La., 542.)

*A. B. Peticolas,* for defendants in error.

I. A mortgage upon a stock of goods, duly recorded, given to secure a note for the purchase-money of the goods, payable one day after date, the mortgagor remaining in possession thereof and selling the same in the ordinary course of trade, which mortgage does not by its terms require the proceeds of sale to be used in discharge of the mortgage debt, is never void where there are no subsisting creditors of the mortgagor. (Paschal's Dig., sec. 3876; Bryant v. Kelton, 1 Tex., 415; Baldwin v. Peet, 22 Tex., 708; Robinson v. Martel, 11 Tex., 155; Brett v. Carter, decided in the U. S. District Court, (Lowell, J.,) in December, 1875, in Mass.; Barnard v. Norwich, 4 Cent. Law Jour., 708; Hughes v. Cory, 20 Iowa, 399; Gay v. Bidwell, 7 Mich., 520; Briggs v. Parkman, 2 Metc., (Mass.,) 258; Jones v. Huggeford, 3 Metc., 515; Barnard v. Eaton, 2 Cush., 294; Cobb v. Farr, 16 Gray,

597; Mitchell *v.* Winslow, 2 Story, 630; Abbott *v.* Goodwin, 20 Maine, 408; Robinson *v.* Elliot, 22 Wall., 513.)

II. A mortgage upon after-acquired property is not void; and if due notice of the intent of the mortgagor to render after-acquired goods liable, is given by the registry of the mortgage, a subsequent creditor cannot attack it successfully unless he shows an express intent to defraud on the part of the mortgagor and mortgagee, or some concealment, deceit, or misrepresentation on their part. (Paschal's Dig., art. 4994; Cook *v.* Steel, 42 Tex., 53; McGee *v.* Fitzer, 37 Tex., 27; Butt *v.* Ellett, 19 Wall., 544; Pennock *v.* Coe, 23 How., 117; Galveston Railroad *v.* Cowdry, 11 Wall., 480; Dunham *v.* Railroad Co., 1 Wall., 254.)

III. The property mortgaged is sufficiently described, Carpenter having no other goods anywhere.

"All my stock of goods, wares, and merchandise in trade, (goods received by me to sell on commission excepted,) and upon all additions which I may hereafter make, by purchase or otherwise, to my stock in trade. Said stock is now situated in A. B. Peticolas' store-house in Victoria, and consists of music, books, stationery of all kinds, chromos and pictures, inkstands, pens, pencils, &c.; brackets, wall pockets, and other wood-work; picture frames, wooden and willow ware, wall paper and curtains, and curtain fixtures; hardware, matting, all kinds of house furnishing goods, household and kitchen furniture, show case, letter press; all kinds of hollow-ware, wooden, stone, and composition; notions, stereoscopic views, stereoscopes, fancy articles," &c. (Pennock *v.* Coe, 23 How., 126; Coghill *v.* Boring, 15 Cal., 213; Van Eman *v.* Stanchfield, 8 Minn., 518.)

IV. The question of fraud in a conveyance is, in Texas, always a question of fact, and the finding of the court below, sitting as a jury, that there was no fraud, is conclusive of the question here. (Bryant *v.* Kelton, 1 Tex., 415; Baldwin *v.* Peet, 22 Tex., 708; Green *v.* Banks, 24 Tex., 508; Kerr *v.* Hutchins, 46 Tex., 385.)

V. The intervention by plaintiffs in error being for the purpose of enforcing the lien of the levy of their executions upon personal property, which had already been seized by defendant in error under a writ of sequestration, and the court below having adjudged intervenors' claim to the satisfaction of their judgments invalid, and intervenors not having suspended said judgment by an appeal and supersedeas bond, and the judgment in the court below having been enforced according to its terms, plaintiff in error has lost his grasp on the goods; and now, as against the defendant in error, has no question in court to be decided. (Mosley *v.* Gainer, 10 Tex., 393; Castro *v.* Illies, 22 Tex., 479; Sherrod *v.* Davis, 17 Ala., 312.)

BONNER, ASSOCIATE JUSTICE. — The lien claimed by the plaintiff below, A. B. Peticolas, must arise from his mortgage, and not from the sequestration, which is merely a judicial deposit. (Fowler *v.* Stonum, 6 Tex., 72.)

The principal question necessary for the decision of this case involves the legal effect, as to third parties, of a mortgage upon a stock of goods, where the mortgagor retains possession, and, with the knowledge and consent of the mortgagee, sells them in the usual course of trade and applies the proceeds to replenish the stock and not to the payment of the debt.

This feature of the case as presented is one of first impression in this court, and we have endeavored to give it that careful consideration and patient investigation of the authorities which its great practical importance demands.

The difficulty is not so much in finding numerous adjudications of the highest courts of last resort upon the question, but in adopting that line of decisions which seems most in consonance with public policy, reason, and justice.

At least ever since the celebrated Twyne's case, 3 Coke, 80, no subject, perhaps, has occasioned more discussion and diversity of judicial opinion than the questions,—What consti-

tute badges of fraud sufficient to avoid the conveyance of a debtor? and whether they are conclusive presumptions of law to be decided by the court, or are mere *prima-facie* presumptions of fact to be considered by the jury?

As has been said, the conflicting decisions upon these questions cannot be reconciled by any process of reasoning or on any principle of law. We have neither the time nor inclination to enter fully into the contest upon this great battle-field of judicial strife, but shall content ourselves to adhere to the tendency of our own decisions, so far as they may be analogous, and, where we have not this aid, to adopt that line of decisions which seems best to comport with sound public policy.

One of the main points decided in Twyne's case was to make it a badge of fraud for the debtor to continue in possession of the property and use it as his own, as by reason thereof he could trade and traffic with others and defraud and deceive them.

Our statute of frauds contains a provision for registration which in its legal effect is equivalent to notice of the conveyance which possession by the mortgagee would give, and thus virtually closes the door to an avenue which formerly occasioned much litigation. As said by a learned court in speaking of a similar statute, it "is a substitute for, and takes the place of and repeals, all those imputations of fraud which would arise from the retention of possession by the grantor." (Bullock *v.* Williams, 16 Dick., 33, as quoted with other authorities in Hughes *v.* Cory, 20 Iowa, 403.) In this last-named case it is held that mere retention of possession, where the instrument is recorded, is no longer either *per se* fraudulent or a badge of fraud in law. It may be a circumstance, with others, to prove fraud in fact.

This would apply with additional force in cases of mortgages, as the possession remaining with the mortgagor is consistent with the purposes of the instrument.

But, as held by the Supreme Court of the United States in

Robinson *v.* Elliott, 22 Wall., 513, and by several State courts, the effect of the statute is not to make a recorded mortgage *prima-facie* valid which, prior to the statute, would have been held fraudulent in law; and it does not protect a mortgage from those stipulations which at common law would otherwise be deemed fraudulent.

One of these stipulations, would be the right of the mortgagor to remain in possession of goods and sell them in the usual course of trade.

It is believed that there should be a marked and well-defined distinction, upon reason and public policy, drawn between a mortgage with power simply to retain possession, and one with power to retain possession and dispose of the property as though the absolute title and right of disposition still belonged to the mortgagor.

It is not claimed—and the high character of the parties to the contract would repel the presumption—that in the transaction under consideration any fraud in fact was intended, and the case will be disposed of under the legal presumptions of fraud arising under the testimony.

Fraud in law, or constructive fraud, is defined to be "such acts or contracts as, although not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, deemed equally reprehensible with positive fraud, and, therefore, are prohibited by law as within the same reason and mischief as acts and contracts done *malo animo.*" (1 Story's Eq. Jur., sec. 258; McKibbin *v.* Martin, 64 Penn. St., 356.)

The decisions of this court under our statute, which requires questions of fact to be submitted solely to the jury, leave all questions of fraud in fact to their determination. (Bryant *v.* Kelton, 1 Tex., 415; Briscoe *v.* Bronaugh, 1 Tex., 326; Kerr *v.* Hutchins, 46 Tex., 384.)

When, however, well-defined legal fraud is shown upon

the face of the instrument itself without a resort to extrinsic testimony, then, as in any other contract which is expressly illegal or contrary to public policy, it is the duty of the court to construe and declare its legal effect. (Baldwin *v.* Peet, 22 Tex., 708; Bailey *v.* Mills, 27 Tex., 434; Robinson *v.* Elliott, 22 Wall., 513; Collins *v.* Myers, 16 Ohio St., 547.)

It is held by the Supreme Court of the United States, in the above case of Robinson *v.* Elliott, and by numerous well-considered decisions of the State courts, that the retention of possession of a stock of goods by a mortgagor, though the instrument be recorded, with power in him to sell the same in the usual course of trade without applying the proceeds to the mortgage debt, but to substitute other goods, is fraudulent in law, without regard to the good faith in fact of the transaction. (Bump on Fraud. Con., 123–130; Herm. on Chat. Mort., chap. 10, and numerous authorities cited in notes; 2 South. Law Rev., (N. S.,) 731.)

These decisions are based upon the propositions that such instruments are void as being against public policy and inconsistent with the true purposes of a mortgage, which, either before or after condition broken, is but a mere security for the debt, and which is intended for the ultimate benefit of the creditor, and not of the debtor; and that a mortgage with such power of sale is but a reservation for the use and benefit of the debtor, and but a mere expression of confidence, as there can be no real security where there is no certain lien.

Perhaps the most pointed reasoning to sustain this proposition is found in Collins *v.* Myers, 16 Ohio St., 547, from the able opinion in which case we quote:

" The object of a mortgage is to obtain a security beyond a simple reliance on the honesty and ability of the debtor to pay, and to guard against the risk of all the property of the debtor being swept off by other creditors, by fastening a specific lien upon that covered by the mortgage. But a mortgage with possession and power of disposition in the mortgagor, is nothing at last but a reliance upon the honesty

of the mortgagor, and in fact is no security, as it is within the power of the mortgagor, at any moment, to defeat the mortgage lien by an entire disposition of the whole property covered by the mortgage. Such a mortgage, then, is no security so far as the debtor is concerned, and is of no benefit except as a ward to keep off other creditors. The very nature of a mortgage is to fasten a lien upon specific property; and the courts have gone far enough when they have permitted an honest possession in the mortgagor. * * * But in this case there is no specific lien, but a floating mortgage, which attaches, swells, and contracts as the stock in trade changes, increases, and diminishes, or may wholly expire by entire sale and disposition, at the will of the mortgagor. Such a mortgage is no certain security upon specific property.

"In such case the whole right to dispose of the property to pay a debt depends upon the will of the debtor, not affected by the rights of the mortgagee; and what reason is there in permitting the will of the debtor to determine whether property shall legally go to pay a debt or not? If it be the will of the debtor to appropriate the mortgaged property to pay the debt, it is binding as against the mortgagee; but if it be not the will of the debtor, and the property is seized upon execution, the rights of the mortgagee fasten upon the property and take it away from the execution creditor. Then the property is not held by the mortgage, but by the will of the debtor; because if the debtor sees proper to dispose of it, he has the power under the mortgage. He may dispose of the property, defeat the mortgage, and put the money in his own pocket; but if he refuses to pay a debt, and you seize the property in execution against his will, the mortgage steps in and restores it to the debtor. The whole matter, then, appears to rest upon the option of the debtor to appropriate the mortgaged property to the payment of his debts or not, and not upon the mortgage. No reasoning will change this result if a mortgagor retains possession and the full power of disposition over the mortgaged property.

" A mortgage upon a specific article, with possession and power of disposition left in the mortgagor, is in truth no mortgage at all; it is no certain lien. The power to hold possession and dispose of the property is inconsistent with the very nature of a mortgage. It, indeed, would not, perhaps, be going too far to say that such an instrument was a nullity.

"As to all the world, except as to the parties themselves, such a mortgage will be held void, as against the policy of the law."

On the other hand, it is contended that there are no conclusive presumptions of fraud, except such as are expressly so made by statute, or where the act is necessarily a fraud upon creditors; as, where an insolvent debtor gives away his estate.

After mature consideration, we have reached the conclusion that the weight of authority and sounder reason is with those decisions which hold such mortgages, although recorded, to be void, except as between the parties thereto, irrespective of the good faith in fact of the transaction; that it should be so declared by the court if the intent and purpose of the parties to make such a mortgage are manifest from the terms of the instrument itself, or by the jury if not so manifest, but clearly shown by uncontradicted testimony. The principle is the same, the only difference being as to the character of the evidence and mode by which it is established.

It does not become necessary to decide whether such power to sell was, by necessary implication, given by the terms of the instrument now under consideration. The cause was submitted to the court without a jury, and the agreed statement of facts in the record shows that it was expected by the plaintiff below himself, that Carpenter would sell in the usual course of trade, and with the proceeds replenish the stock; and that he knew that Carpenter was thus disposing of the mortgaged stock. Under this testimony, as applied to the law, we think the court erred in holding the mortgage valid

as against the plaintiffs in error, and that had a jury so found under the evidence the verdict should have been set aside. For this error the judgment below should be reversed.

Another very important question presented by the record is that of the legal effect of a mortgage, as to third parties, upon after-acquired goods added to the mortgaged stock in trade.

In the opinion of the court, this and the remaining questions are not necessary to a proper decision of the case under the conclusion to which we have come, and as it is also a new question in this court, the determination of which might seriously affect important rights, we do not wish, without further argument and an exhaustive review of the authorities, and in a case in which it is necessarily involved, to decide it; hence no opinion is given upon this branch of the case.

Judgment reversed.

JUDGMENT REVERSED.