## J. Z. H. Scott v. Albert N. Alford.

*(Case No. 511.)*

1. Fraud — Charge of court. — It is only when the fact or intention which avoids a deed is patent upon the face of the instrument, or is a necessary deduction from it, that the court can pronounce it void. Nor is it authorized to tell the jury, upon proof of a given fact, that they should find against the instrument, unless fraud is a legal and indisputable deduction from the existence of the fact.

2. Fraud — Bankrupt. — A bankrupt, within six months prior to being adjudged a bankrupt, executed a deed of trust upon his entire stock of goods to secure a creditor; the deed was not filed for record until two months after its execution. No provision was made for other creditors. The trustee was to take possession only on the non-payment of the debt at maturity, and the business was to be conducted by the debtor, as usual, in the ordinary course of trade. *Held,* that the transaction was not fraudulent *per se;* for a court to hold otherwise would be a usurpation of the province of the jury.

3. Assignee in bankruptcy — Fraud — Deed of trust. — An assignee in bankruptcy who failed to show that he represented creditors who were hindered, delayed or defrauded by a deed of trust, made and recorded by the bankrupt within six months before the adjudication in bankruptcy, was bound by it.

4. Bankrupt law. — The bankrupt law did not absolutely avoid all transfers made by the bankrupt within six months prior to the adjudication in bankruptcy, but only those in which the grantee had reasonable cause to believe that the conveyance was made contrary to, or in fraud of, the law.

5. Fraud — Due diligence — Notice. — The execution of a deed of trust by a debtor, out of his usual course of business, to secure a creditor, does not affect the creditor with notice of the debtor's insolvency, but imposes on him the duty of using due diligence to ascertain the fact.

6. Distinguished cases discussed. — This case distinguished from Peiser v. Peticolas, 50 Tex., 638, and the latter case discussed.

7. Deed of trust — Fraud. — A stipulation in a deed of trust executed on a stock of goods to secure a creditor, which attempts to create a lien on such goods as may be afterwards added to the stock, cannot affect the other provisions of the deed, if it be in other respects valid.

Error from Galveston. Tried below before the Hon. A. P. McCormick.

Suit originally brought December 11, 1869, by A. N. Alford against Huffman, Musick & Co., sequestering their stock

of goods, and to enforce a lien on the same, which he claimed under a deed of trust.

Huffman, Musick & Co. bought out the stock of A. N. Alford, who was in the business, on August 16, 1869, of a wholesale grocer.

On the 3d September, 1869, deed of trust was executed by H., M. & Co. upon their stock of goods to secure Alford.

On the 8th November, 1869, Huffman, Musick & Co. made a general assignment of their stock of goods to one Armstrong for benefit of all creditors.

On the 9th November, 1869, Alford filed deed of trust for record, and on the same day brought suit.

On the 11th December, 1869, the creditors filed a petition in bankruptcy, on which Huffman, Musick & Co. were adjudged bankrupts.

Afterwards Scott, assignee of the bankrupts, made himself a party defendant in the sequestration suit. Armstrong, assignee under the voluntary general assignment, entered a disclaimer, declaring that he did not claim the stock as against the assignee in bankruptcy.

The deed of trust was to M. C. McLemore, trustee, and recited that it was to secure certain drafts, dated August 16, and due thirty, ninety, and one hundred and twenty days after date. The description of the property conveyed is:

"All that stock of goods, wares and merchandise belonging to us, in our storehouse on the Strand, in the city of Galveston, as well as our future stock of goods as it may be hereafter acquired in the conduct of our mercantile business as general grocers, in the said city of Galveston, consisting, and to consist, of a general stock of groceries, Western produce, whiskies, wines and tobaccos."

In event of non-payment of said drafts, or any one of them, it was provided, in "that event,"

"The said trustee, or his successor, as hereinafter provided for, shall be entitled to the possession of all such property as is hereby conveyed, and intended to be conveyed, and he shall

be and is hereby authorized to enter the premises in which the same may be stored at the time of default, and to take possession of said premises, and the contents of said storehouse, and at request of the holder of any or all of said drafts, shall sell so much of said property at public auction as may be sufficient to satisfy said drafts."

In the amended petition Alford alleged, in explanation of not having sooner recorded the deed of trust, as follows:

" It was not recorded earlier than 9th November, 1869, because plaintiffs wished to avoid the expense of its record, and relied on the good faith and ability of defendants to pay said drafts at maturity."

The testimony of M. C. McLemore, trustee, was " that he had never taken possession of, or had any management or control of said stock of goods; but that, as far as he was concerned, the stock had been left in possession of Huffman, Musick & Co. just as they were before the execution of said deed of trust."

Appellant objected to the introduction of the deed of trust, on the ground that the same was void on its face, inasmuch as it permitted the control of the property conveyed to remain in possession and control of the makers of the instrument, with full power to sell. The objection was overruled.

Huffman, Musick & Co. were indebted to other creditors on the 16th of August, 1869, about $5,000, and previous to September 12, about $7,000. They were adjudged bankrupts on December 19, 1869. The court charged the jury, among other things, that if they believed from the evidence that plaintiff had not shown that he acted in good faith in the matter of taking the mortgage, retaining it unrecorded, and permitting the mortgagors to remain in possession and continue to sell, with a view only to secure his debt, and not with a view to hinder, delay and defraud other creditors of the mortgagors, they would find the mortgage to be valid.

Musick testified that at the time of the sale the firm owned no other property, but their stock on hand was worth about

$4,000. Alford and others testified that the firm was considered solvent at the time.

Verdict and judgment for plaintiff.

The assignments of error are apparent from the opinion.

*Willie & Cleveland* and *Mann & Baker* for appellant.

I. The first assignment of error is relied on as a proposition and is as follows: "The court erred in overruling exceptions of defendant to admission in evidence of deed of trust sued on, as said deed of trust shows on its face in express terms that it was given by Huffman, Musick & Co., as merchants, on their stock of goods, wares and merchandise then on hand, and on all after-acquired stock, and gives no possession or right of possession of said stock to the trustee unless the makers fail to pay the notes for the security of which it was given." Peiser & Co. *v.* Peticolas, 50 Tex., 638; Baldwin *v.* Peet, 22 Tex., 708; Rev. Stat. U. S., 5046; Allen *v.* Massey, 17 Wall, 351; Robinson *v.* Elliott, 22 Wall., 513; *In re* Manly, 3 N. Bank Reg., 291; Harvey *v.* Crane, 5 B. Reg., 218; Bradshaw *v.* Klein, 2 Bissell, 20; Edmondson *v.* Hyde, 7 N. B. Reg., 1; Kane *v.* Rice, 10 N. B. Reg., 469, 475; Smith *v.* Ely, 10 N. B. Reg., 553; Tenn. Nat. Bk. *v.* Ebbert, 9 Heisk., 153; Knolton *v.* Mosely, 105 Mass., 136; Stanley *v.* Bruce, 27 Mo., 269; Billingsly *v.* Bruce, 28 Mo., 547; Lodge *v.* Samuel, 50 Mo., 204; Allen *v.* Montgomery, 48 Miss., 101; Collins *v.* Myers, 16 Ohio, 547; Edgell *v.* Hart, 5 Seld. (N. Y.), 216; Blakeslee *v.* Rossman, 43 Wis., 116; Cheatham *v.* Hawkins, N. Car., Jan. Term, 1879, 8 Cent. Law J., 346.

II. "The court erred in refusing the charge asked by the defendant: that there being no provision in the deed of trust allowing trustee to take possession of the goods of Huffman, Musick & Co. until the notes fell due, makes the instrument void, and the jury will find for the defendant."

We rely on this assignment also as a proposition. Paschal's Dig., art. 4988; Howerton *v.* Holt, 23 Tex., 51; Earle *v.* Thomas, 14 Tex., 583; Clarion Bank *v.* Jones, 21 Wall., 337; Toof *v.*

Martin, 13 Wall., 40; Robinson *v.* Elliott, 22 Wall., 513; 14 Wall., 87; Giddings *v.* Dodd, 1 Dillon, 115; Smith *v.* Ely, 10 N. B. Reg., 553; Hilliard *v.* Cagle, 46 Miss., 309.

III. We rely on the third assignment of error also as a proposition, viz.: "The court erred in refusing the following charge asked by defendants: 'If the jury find from the evidence that the deed of trust was given with the understanding and agreement between Huffman, Musick & Co., or any other member of that firm, that it was not to be recorded until it should be necessary to use it, then the jury will find for the defendant.'" Gill *v.* Griffith, 2 Md., Ch. Dec., 270.

IV. The fourth assignment of error, which is also relied on as a proposition, is: "The court erred in refusing the following charge asked by defendant: 'As the deed of trust was given within six months prior to adjudication in bankruptcy, if the jury find that the stock of goods on which it was given constituted the sole capital of the firm, then it operated necessarily as a preference and in contemplation of insolvency, and the jury will find for the defendant.'" U. S. Revised Statutes, 1873, sec. 5129; Toof *v.* Martin, 13 Wall., 40; Wager *v.* Hall, 16 Wall., 277, 584; *In re* Kingsbury, 3 N. B. Reg., 318, 323; Merchants' National Bank *v.* Cook, 5 Otto, 342.

V. The fifth assignment of error, which is relied on as a proposition, is as follows: The court erred in refusing the following charge asked by defendant: "If the jury believe that the mortgage was out of the usual course of business of Huffman, Musick & Co., it was sufficient to put the plaintiff on inquiry as to the solvency of Huffman, Musick & Co., and if the latter firm were actually insolvent at the time, the plaintiff was affected with notice of it."

The deed of trust and the proof showed that Huffman, Musick & Co. were wholesale grocers at the time of the transaction; that they mortgaged their entire stock, on hand and to arrive, and all additions that might be made to it in the course of trade; that Huffman, Musick & Co. continued in possession of the mortgaged property and carried on their business as

before. The debt secured by the deed was about $6,800, the value of the stock of goods bought by them from the plaintiff, and they had, besides the stock thus purchased, about $4,000 worth of goods on hand, which were included in the mortgage, and had no other property. The inquiry made by plaintiff as to their solvency was of Geo. Sealy, of Ball, Hutchings & Co. (Huffman, Musick & Co.'s bankers), and he said he considered them good; that they had been as prompt in meeting their obligations as any house in the city, and it was understood that Mr. Huffman was quite wealthy. P. A. Huffman stated that Ball, Hutchings & Co. thought at the time of the sale that the credit and prospects of Huffman, Musick & Co. were good, and W. A. Huffman stated that he did not suppose Alford at the time had any reason to suppose the firm was insolvent or contemplating insolvency; their financial condition at the time was somewhat embarrassed, but they had good reason to suppose they could pay all their debts. U. S. Rev. Stats., § 5130; Walburn *v.* Babbitt, 16 Wall., 577; Schulenburg *v.* Kabureck, 2 Dillon, 132; *In re* Kingsbury, 3 B. Reg., p. 317.

VI. The deed of trust upon which the suit and judgment are founded extends its lien over after-acquired property, and permits the grantee to keep possession of the goods and deal with them as his own, and is therefore void, and more especially as to after-acquired goods, and judgment should have been rendered for the assignee in bankruptcy. Hermann on Chattel Mortgages, 89, 95; Fry on Spec. Per., § 29, marg. p. 14; Otis *v.* Sill, 8 Barb., 102; Moody *v.* Wright, 54 Mass., 17; Holroyd *v.* Marshall, 10 H. of L., 190; Topfield *v.* Hillman, 46 E. C. L., 244.

*F. Charles Hume* for defendant in error.

I. The court properly overruled exceptions to admission in evidence of trust deed. The fact that the trust deed expressed that it was given by Huffman, Musick & Co., as merchants, on their stock of goods then in hand and thereafter to be acquired, and gave no possession, or right of possession, of said

stock to the trustee, except in the event of the makers'·failing
to pay the drafts to secure which the deed was executed, was
no objection to its admission in evidence, or to its validity.   Du-
pree v. McClanahan, Court of Appeals, Galveston Term, March,
1877.   [In this case the court discusses the question and au-
.thorities at length, expressly approving Brett v. Carter, 2 Low-
ell's Decisions, 458,·to the very point; Barnard v. Norwich &
W. R. R., Clifford, J., 14 N. B. R., 469, and Leland .v Culliver,
34 Mich., 418; and I now earnestly request special examina-
tion of these·cases.   The first, Brett v. Carter, exhausts the
subject.]   Hughes v. Cory, Dillon, J., 20 Iowa, 399; Galveston
Railroad v. Cowdrey, 11 Wall., 459; Pennock v. Coe, 23 How.,
117; Briggs v. Parkman, 2 Met., 258; Jones ·v. Huggeford,
·3 Met., 517; Hoely v. Brown, 14 Conn., 265; Fletcher v.
Morey, 2 Story, 555; Mitchell v. Winslow, Id., 630; Notes to
·Tuyune's Case, 1 Smith's S. C.; Gray v. Bidwell, 7 Mich., 519;
Barnard v. Eaton, 2 Cush.,·294; Cobb v. Farr, 16 Gray, 597;
Abbott v. Goodwin, 20 Maine, 408; Monvill v. Noyes, 56
Maine, 458; Pierce v. Emery, 32 N. H., 484; Benjamin v.
Elmira R. R. Co., 49 Barb., 441; Philadelphia, etc., Co. v.
Woepper, 64 Penn. St., 366; Philips v. Winslow, 18 B. Mon.,
431; Sillens v. Lister, 48 Miss., 513; Pierce v. Mil. R. R. Co.,
24 Wis., 551; May on Voluntary and Fraudulent Conveyances,
126; Benjamin on Sales, 1st ed., 60–1; Topfield v. Hillman,
46 Eng. Com. Law, 243; Holroyd v. Marshall, 10 House of
Lord's Cases, 190 et seq.

II. The court did not err in refusing to charge, "That
there being no provision in the deed of trust allowing trustee
to take possession of the goods of Huffman, Musick &. Co.
until the notes fell due, makes the instrument void, and the
jury will find for defendant."   Baldwin v. Peet, 22 Tex., 708,
and cases cited under first counter proposition.

III. The court did not err in refusing to charge, " If the
jury find from the evidence that the deed of trust was given
with the understanding and agreement between Huffman,
Musick & Co., or any other member of that firm, that it was

not to be recorded until it should be necessary to use it, then the jury will find for the defendant, because the charge assumed that the finding by the jury of the fact of the understanding suggested, would be *conclusive* against the validity of the trust deed. Cases cited under first counter proposition, and Baldwin *v.* Peet, 22 Tex., 708; 3 Bankrupt Register, 179; Winson *v.* McClellan, 2 Story, 492.

IV. The court did not err in refusing to charge, "As the deed of trust was given within six months prior to the adjudication in bankruptcy, if the jury find that the stock of goods on which it was given constituted the sole capital stock of the firm, then it operated necessarily as a preference and in contemplation of insolvency, and the jury will find for the defendant," because the charge as asked omitted altogether the controlling elements of *knowledge* and *intention.*

Ewart *v.* National Bank, 7 Otto, 80; Toof *v.* Martin, 13 Wall., 40; Buchanan *v.* Smith, 16 Wall., 277; Wager *v.* Hall, id., 584; Merchants' National Bank *v.* Cook, 5 Otto, 342; Eyster *v.* Gaff, 1 Otto, 521; Mays *v.* Fritton, 20 Wall., 414; Wilson *v.* City Bank, 17 Wall., 473.

V. The court did not err in refusing to charge, " If the jury believe that the mortgage was out of the usual course of business of Huffman, Musick & Co., it was sufficient to put the plaintiff on inquiry as to the solvency of Huffman, Musick & Co., and if the latter firm were actually insolvent at the time, the plaintiff was affected with notice of it."

The court charged the jury, *inter alia,* "The mortgage, if it was in fact given in part consideration of the purchase made of the plaintiff at the time of said purchase, though its execution may not have been completed until a day subsequent, is not rendered invalid by the bankrupt act, and is valid, unless rendered invalid by the acts of the plaintiff.

"The mortgage is invalid as to all creditors, if you find from the proof that it was given, not in consideration of the purchase of plaintiff's goods at the time of said purchase, or subsequently in carrying out the contract then made, but that it was

in fact made subsequently to said purchase, as a new arrange-
ment to secure the debt made previously in said purchase,
and that the mortgagors were insolvent at the time of making
of said mortgage." (R. 37.)

VI. Tiffany *v.* Boatman's Institution, 18 Wall., 365; Clark
*v.* Isaline, 21 Wall., 360; Mays *v.* Fritton, 20 Wall., 414;
Sawyer *v.* Turpin, 1 Otto, 114.

The assignee in bankruptcy was not entitled to judgment,
nor was the trust deed void, because that instrument covered
after-acquired property, and permitted its makers, Huffman,
Musick & Co., to keep possession of, and deal with, the goods
as their own.

VII. Where a trust deed is in the usual form, containing
no stipulation that the makers thereof shall sell the goods con-
veyed in the usual course of trade and apply the proceeds to
their own benefit, or to the purchase of other goods, and not
to the payment of the secured debt, it is not void upon its face.
And where the facts do not tend to show that the makers ap-
plied the proceeds of the sale of the goods to their own benefit,
or to the purchase of other goods, but, on the contrary, the
proof is that part of the debt *was* paid by the makers while
in charge of the goods, such trust deed is valid. Crow, Har-
gadine & Co. *v.* Red River County Bank, Tex. Law J. of 24
Dec., 1879; S. C., Tyler Term.

Moore, Chief Justice. — The correctness of the verdict of
the jury upon the evidence submitted to them, is not contro-
verted. The errors assigned relate solely to the action of the
court in overruling an exception of appellant to the admission
in evidence of the deed of trust given by Huffman, Musick &
Co. to secure the payment of the notes to Alford, upon which
the suit is founded, and to the refusal of the court to give cer-
tain charges requested by appellant as to the effect of said

Note.— Moody *v.* Wright, 13 Met. (54 Mass.), 17, cited by plaintiff in
error in support of his last, or sixth, proposition, is expressly overruled in
Brett *v.* Carter, 2 Lowell's Decisions, 458, *supra.*

deed. These errors are substantially exhibited in the following summary, to wit:

1st. It appearing upon the face of the deed that the grantors were authorized to retain possession of the stock of goods, wares and merchandise covered by it, and to continue selling in their usual course of business until default in the payment of the notes for security of which it was given, the deed was fraudulent and void.

2d. If the deed was given upon the understanding with Huffman, Musick & Co., or with any member of the firm, that it was not to be recorded until it should become necessary to use it, the jury should find for appellant, the defendant in the court below.

3d. If the stock of goods upon which the deed was given constituted the entire capital of the firm of Huffman, Musick & Co., as it was given within six months prior to their adjudication in bankruptcy, it necessarily operated as a preference and in contemplation of insolvency, and the jury should find in favor of the defendant.

4th. If the giving of the deed was out of the usual course of business of Huffman, Musick & Co., this was sufficient to put Alford upon inquiry as to their solvency, and if they were in fact insolvent at the time, Alford was charged with notice of it.

No complaint is made by appellant of the instruction given the jury by the court, or, as we have said, to their finding on the evidence submitted to them. It would seem that the theory upon which appellant's counsel sought to have the case tried in the court below, and asks that it shall be determined in this court, is, that the facts exhibited by the deed, or the finding by the jury of either of those referred to in the charges asked, is conclusive evidence of fraud, irrespective of the purpose and intent of the parties executing the deed. In other words, the retention of possession and power to sell in the ordinary course of trade, by the mortgagors, the failure to record the deed, the giving of a deed upon the entire capital stock of

a firm within six months prior to its adjudication in bankruptcy, or the giving a deed of trust on their entire stock, the bankrupts, in conformity to the agreement upon which they purchased the bulk of it, if not in their usual course of trade, was *per se* conclusive evidence of fraud sufficient to avoid a deed, though the evidence might be ample to rebut the presumption of fraud which these matters would warrant, if unexplained.

Such, in our opinion, is not the law as established and maintained by the unbroken current of decisions of this court from its organization down to the present time. (Bryant *v.* Kelton, 1 Tex., 417; Converse *v.* McKee, 14 Tex., 20; Earle *v.* Thomas, Id., 583; Linn *v.* Wright, 18 Tex., 317; Baldwin *v.* Peet, 22 Tex., 708; Howerton *v.* Holt, 23 Tex., 57; Green *v.* Banks, 24 Tex., 508; Kerr *v.* Hutchins, 46 Tex., 384.)

It is only where the fact or intention which avoids the deed is patent upon the face of the instrument, or is a necessary deduction from it, that the court can pronounce it void. Nor is it authorized to tell the jury, upon proof of a given fact, they should find against the instrument, unless fraud is a legal and indisputable deduction from the existence of the fact, or matter in question.

Now, although the objections made by appellant to the *bona fides* of the deed in question in this case, are certainly obvious badges of fraud, and, it may be, would have fully justified the jury, or even, taken in connection with the other testimony, have required them to return a different verdict from that found, as the matters indicated in the instructions asked are neither singly nor collectively such as to warrant a conclusive deduction of fraud, it was not error for the court to decline giving them. To have done otherwise would have been an usurpation by the court of the province of the jury, or rather to have made the decision of the case turn upon proof of a badge of fraud, instead of actual fraud.

The deed of trust was good as between the parties and those charged with notice of it, whether recorded or not. And it

seems to be well established, that, as it was recorded before appellant was appointed assignee, he stands in no better position in respect to it than would the grantees, especially as it has not been made to appear that he represents creditors who have been delayed, hindered or defrauded by the deed. (Winsor v. McLellan, 2 Story, 492; In re Dow, 6 N. B. R. Rep., 10; Sawyer v. Turpin, 1 Otto, 114.)

The bankrupt law does not absolutely avoid all transfers by the bankrupt within six months prior to the adjudication, but only where the party to whom the property is conveyed has reasonable cause to believe the conveyance is contrary to, or in fraud of, the law. (Rev. St. U. S., sec. 5120; Craig v. Carmichael, 2 Dill. C. C. Rep., 519.)

Nor does the fact that the deed of trust given by Huffman, Musick & Co. was out of their usual course of business (though there is nothing in the record on which to base such a conclusion), affect Alford with notice of their insolvency, if they were insolvent, but imposes upon him the duty of using due diligence to inform himself upon the subject. (Schulenburg v. Kabureck, 2 Dill. C. C. Rep., 132.)

So obvious is the conclusion from what we regard as the well established law and practice of this court, that the court did not err in its rulings, that it seems to us unnecessary to add to what has been already said, nor would we do so but for the zeal and learning displayed by appellant's counsel, and the evident good faith with which they refer to a recent decision of the court (Peiser v. Peticolas, 50 Tex., 638), as supporting their first assignment of error, as well as a fundamental error, which, as they insist, is shown by the record, viz.: That the deed of trust is void, because it purports to convey subsequently acquired property.

It is said in Peiser v. Peticolas, in accordance with previous decisions of the court (Baldwin v. Peet, 22 Tex., 708; Bailey v. Mills, 27 Tex., 434), that "where well defined legal fraud is shown upon the face of the instrument itself, without resort to extrinsic testimony," it is the duty of the court to declare its

legal effect and pronounce the instrument void. And if the fact that Huffman, Musick & Co. were to retain the goods conveyed by them, with the right to sell in the usual course of business until they should make default in payment of the notes for security of which the deed was given, " is well defined legal fraud," it cannot be defined that the court below erred in refusing to exclude the deed from the jury. But while there is no doubt great conflict in the decisions upon the point, we are not prepared to say that such a stipulation in a deed of trust, without reference to the facts, is legal fraud. In our opinion the weight of authority is against it. To hold that authority to sell in his usual course of business invalidates the deed, would virtually deny to a trader the right to give a mortgage upon his stock for ever so short a time, however inconsiderable the debt might be in comparison with the mortgaged property, or however clearly the facts might demonstrate that there was no intent or purpose to defraud. (Fletcher v. Morey, 2 Story, 555; Briggs v. Parkman, 2 Met., 258; Jones v. Hoggendon, 3 Met., 507; Hughes v. Craig, 20 Iowa, 399.)

Ordinarily, when possession is held in accordance with the terms of the deed, such possession is not even a badge of fraud; while in other cases its retention by the grantor, and especially with the power of disposition, is the strongest evidence of fraud; and if it appear on the face of the deed that it will operate to an unreasonable advantage of the grantor or to the detriment and injury of his creditors, the deeds will be pronounced fraudulent *per se*.

The case of Peiser v. Peticolas, evidently, in the opinion of the judge by whom the opinion was prepared, belonged, if the facts before the court and admitted by the grantee were shown by the deed, to the last class of cases. While there are some very strong expressions in the opinion which seem to give countenance to the conclusion that the retention of possession of mortgaged property, coupled with the right to sell, authorizes the court to pronounce a deed fraudulent in law, it must be remembered that the opinion and judgment of a court

must always be measured and interpreted by the facts and points to be decided, and in this case the court was exercising the blended functions of court and jury.

The deed in that case, it should also be noted, was given to secure a debt past due. The possession and right to sell the existing and subsequently acquired stock was for a period of indefinite duration. The effect of such a transaction, if legal, was to permit an insolvent party to do business under cover of deed of trust in favor of friendly and preferred creditors, in defiance of and at the expense of his other creditors, for an indefinite period of time. It might well be said, when such a case as that is shown on the face of the deed, that the court could only construe it as a fraudulent device to hinder and delay creditors, irrespective of the real intent and purpose of the parties. Such a possession and power of disposition was unreasonable and inconsistent with the *bona fide* security of a debt already past due, and a delay and hinderance of the creditors. The agreement seems evidently to have contemplated a continuance for such a length of time that the entire stock on hand would be disposed of in the ordinary course of business.

The facts of this case are altogether different. Possession was to be retained merely until there was a default or failure to meet the notes, which had but a short time to run. The amount of goods was considerably in excess of the debt with which they were charged. This excess was apparently sufficient to permit of sales in the ordinary course of business by the owner without impairing the security. Under these circumstances we do not think it can be said that the court would have been warranted in holding the deed absolutely void or in instructing the jury that it was their duty to do so.

In response to the objection that the deed is invalid because it attempts to create a lien upon such goods, wares and merchandise as might be subsequently added to their stock by the grantors, it will suffice to say that the record does not show that there were any additions made to the stock after the execution of the deed. Such a stipulation in a deed certainly does

not affect its provisions, if otherwise valid, in respect to the stock on hand at the date of the deed.   There is, therefore, nothing in the record to sustain the objection, even if it had been assigned as error; much less can it be said that the court should reverse the judgment because it goes, as claimed, to the foundation of the action.

There is no error in the judgment of which appellant has complained, and it is therefore affirmed.

Affirmed.